NATIONAL BISCUIT COMPANY v. STATE OF TEXAS.

No. 7618. Decided January 24, 1940.
(135 S. W., 2d Series, 687.)

294

*William Ryan, Sidney Benbow, C. R. Wharton, Levert J. Able* and *Barker, Botts, Andrews & Wharton,* all of Houston, for plaintiff in error.

On the question of the right of plaintiff to recover taxes paid in order to prevent his right to do business within the State, under an illegal act, and for laches. Ex parte Young, 209 U. S. 123, 52 L. Ed. 714; Stephens v. Texas & Pac. Ry. Co., 100 Texas 177, 97 S. W. 309; Atchison, T. & S. F. Ry. Co. v. O'Connor, 223 U. S. 280, 56 L. Ed. 436.

*Gerald C. Mann,* Attorney General, *Glenn R. Lewis* and *A. S. Rollins,* Assistants Attorney General, for defendant in error.

Tax paid without attempt to prevent the illegal collection cannot be recovered after a period of twenty years. Wilson v. School Dist., 195 Atl. 90; Conrad v. Kasch, 26 S. W. (2d) 732; Winters v. Coward, 174 S. W. 940.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This suit was filed in the District Court of Travis County by National Biscuit Company, a foreign corporation, hereinafter designated the Company, against the State of Texas to recover the sum of $55,040.00 paid by it in 1909 as a permit fee, and to recover the further sum of $38,367.00 paid by it as franchise taxes for the years from 1907 to 1917, both inclusive. The suit was authorized by joint resolution passed by the Texas Legislature in May, 1937. Trial in the district court resulted in a judgment for the State. On appeal by the Company the Court of Civil Appeals affirmed the judgment of the district court. 129 S. W. (2d) 494. The case is in the Supreme Court on writ of error granted on application of the Company.

As above stated, the suit was authorized by joint resolution passed by the Texas Legislature. The resolution is as follows:

"SENATE CONCURRENT RESOLUTION NO. 63
"By Stone.
"WHEREAS, National Biscuit Company is a foreign corporation with permit to do business in Texas, and has been doing business continuously in Texas since 1907; and
"WHEREAS, The said National Biscuit Company has paid filing fees and franchise taxes to the State of Texas continuously from 1907 to 1917, under the then existing franchise tax and filing fee laws, which have been declared unconstitutional by

the Supreme Court of the United States, said decision holding that the taxes and filing fees so paid were illegally and unlawfully exacted from National Biscuit Company by the State of Texas; and

"WHEREAS, There is no provision of law, nor has there been any provision of law whereby this money unlawfully exacted could be returned or recovered except through a direct appropriation by the Legislature; and

"WHEREAS, There is no machinery set up by the laws of the State of Texas to accurately and definitely determine just what amount of taxes should be returned, if any; and

"WHEREAS, In order to definitely and accurately determine the same, it is the policy of this Legislature to let a court of competent jurisdiction pass upon the same; and

"WHEREAS, The Legislature of the State of Texas has from time to time permitted other corporations, such as National Biscuit Company, to recover these taxes, and has made appropriations to pay the same; now, therefore, be it

"RESOLVED, By the Texas Senate, with the House of Representatives concurring, that National Biscuit Company be, and the same is hereby granted permission to bring suit against the State of Texas in any court of competent jurisdiction in Travis County, Texas, to determine definitely and accurately what amount of taxes and filing fees may have been heretofore illegally exacted of National Biscuit Company by the State of Texas and paid to the State of Texas, if any, as filing fees and franchise taxes under any such unconstitutional law as hereinabove mentioned, and there is hereby appropriated out of the Treasury such funds as may be necessary not heretofore appropriated to pay any final judgment which may be obtained by reason of the permission to sue the State of Texas herein granted, and service of citation for the purpose herein granted may be served upon the State of Texas by serving the Attorney General, Secretary of State and the Comptroller of Public Accounts."

In 1889 the Texas Legislature enacted a law fixing permit fees to be paid by foreign corporations. Acts 1889, p. 87. Under Section 5 of the 1889 Act, permit fees for foreign corporations were fixed as follows:

Corporations with a capital stock of $100,000, or less, paid $25.00. Corporations with a capital stock of more than $100,000, and less than $500,000, paid $50.00. Corporations with a capital stock $500,000, and less than $1,000,000, paid $100.00.

Corporations with a capital stock exceeding $1,000,000 paid $200.00. These fees were payable annually.

The permit fee Act of 1889, supra, was carried into the codification of 1895 as Article 2439. In other words, under Article 2439, supra, the annual permit fees charged foreign corporations were the same as were charged under the Act of 1889, supra.

In 1905 the Legislature amended Article 2439, R. C. S. 1895, supra, so as to charge foreign corporations permit fees as follows: Corporations with a capital stock of $10,000, or less, were charged $25.00. Corporations with capital stock exceeding $10,000 were charged $25.00 for the first $10,000, and $5.00 for each additional $10,000, or fractional part thereof. Acts 1905, p. 135.

In 1907 the Legislature again amended Article 2439, R. C. S. 1895, supra, as amended, so as to charge foreign corporations as follows: Corporations with capital stock of $10,000, or less, were charged $50.00. Corporations with capital stock exceeding $10,000 were charged $50.00 for the first $10,000, and $10.00 for each additional $10,000, or fractional part thereof. Acts 1907, p. 500.

In 1909 the Legislature again amended Article 2439, R. C. S. 1895, as amended in 1905 and 1907, so as to charge foreign corporations the following permit fees: Corporations with capital stock of $10,000, or less, were charged $50.00. Corporations with capital stock exceeding $10,000 were charged $50.00 for the first $10,000, and $10.00 for each additional $10,000, or fractional part thereof. Acts 1909, p. 266.

The Act of 1909, supra, so far as applicable here, was codified as Article 3837, R. C. S. 1911. In such Article permit fees charged foreign corporations were the same as provided by the Act of 1909, supra.

The permit fee statutes above mentioned have been amended since the codification of 1911, but we are not interested in such amendments in this suit.

In 1899 National Biscuit Company, hereinafter called the Company, obtained a permit to do business in Texas, and, we presume, paid the permit fee then required by statute,—$200.00. Article 2439, R. C. S. 1895, supra.

In 1909 the Company renewed its permit to do business in this State. In order to effect such renewal the Company was required to pay the permit fees provided by Article 2439, R. C. S. 1895, as amended in 1909, supra, being the same fees required by Article 3837, R. C. S. 1911. Under such statute the Company was required to pay the sum of $55,040.00.

In 1893 the Legislature passed an Act levying an annual franchise tax on foreign corporations, such as this, of $10.00. Acts 1893, p. 157, sec. 5.

The Act of 1893, supra, was carried into the codification of 1895 as Article 5343i. Under such Article the franchise tax charged a foreign corporation, such as this, was $10.00, regardless of capital stock.

In 1897 the Legislature amended Article 5243i, supra, along with Article 5243e and 5243k, R. C. S. 1895. The Act of 1897 levied franchise taxes on foreign corporations, such as this, as follows:

"And each and every foreign corporation having an authorized capital stock of one hundred thousand dollars or less which has heretofore received a permit to do business in this State, under the laws of this State, shall pay to the Secretary of State an annual franchise tax as follows: Each and every foreign corporation having a capital stock of $25,000 or less, an annual franchise tax of $25.00; each and every foreign corporation having a capital stock of more than $25,000, and not exceeding $100,000, an annual franchise tax of $100.00 to be paid on or before the first day of May of each year; and every such corporation which shall hereafter receive such permit shall also pay to the Secretary of State an annual franchise tax of fifty dollars, the tax for the first year to be paid at the time such permit is issued, and the Secretary of State shall not be required or permitted to issue said permit until said tax is paid, and each succeeding tax shall be paid on or before the first day of May of each year thereafter, and any such corporation having an authorized capital stock of more than one hundred thousand dollars shall in addition to the franchise tax of fifty dollars, as above provided, also pay a franchise tax of one dollar for every ten thousand dollars of their capital stock over and above one hundred thousand dollars." Acts 1897, p. 141.

Article 5243i, as amended, was again amended in 1897. The Act just mentioned levied franchise taxes on foreign corporations, such as this, as follows:

"Each and every foreign corporation heretofore authorized to do business in this State under the laws of this State shall, on or before the first day of May of each year, and each and every such corporation which shall hereafter be so authorized to do business in this State, shall, at the time so authorized, and on or before the first day of May of each year thereafter, pay to the Secretary of State the following franchise tax:

Every such corporation having an authorized capital stock of twenty-five thousand dollars or less, an annual franchise tax of twenty-five dollars; every such corporation having an authorized capital stock of more than twenty-five thousand dollars and not exceeding one hundred thousand dollars, an annual franchise tax of one hundred dollars; every such corporation having an authorized capital stock of over one hundred thousand dollars, an annual franchise tax of one hundred dollars, and in addition thereto an annual franchise tax of one dollar for every ten thousand dollars of authorized capital stock over and above one hundred thousand dollars and not exceeding one million dollars; and if such authorized capital stock exceeds one million dollars, then such corporation shall pay a still further additional tax of one dollar for every one hundred thousand dollars over and above one million dollars." Acts 1897, p. 168.

Article 5243i, R. C. S. 1895, as amended, was again amended in 1905. The act of 1905 levied annual franchise taxes on foreign corporations, such as this, as follows:

"And each and every foreign corporation heretofore authorized, or that may hereafter be authorized, to do business in this State, shall, on or before the first day of May of each year, pay to the Secretary of State the following franchise tax for the year following, to-wit: One dollar on each one thousand dollars or fractional part thereof of the authorized capital stock of the corporation up to and including one hundred thousand dollars; and one dollar on each five thousand dollars or fractional part thereof of such stock in excess of one hundred thousand dollars, and up to and including one million dollars; and one dollar on each twenty thousand dollars or fractional part thereof of such stock in excess of one million dollars, and up to and including ten million dollars; and one dollar on each fifty thousand dollars of such stock in excess of ten million dollars; but such tax shall not be less than twenty-five dollars in any case. Whenever a corporation is chartered or authorized to do business in this State, it shall pay the proportional part of such annual franchise tax corresponding to the length of time before the next following first day of May, and if such tax be not then paid, no such charter shall be filed or permit issued. The franchise tax herein provided for shall be computed upon the basis of the total amount of the capital stock issued and outstanding, plus the surplus and undivided profits of the corporation, instead of upon the authorized capital stock,

whenever such total amount is different from the authorized capital stock." Acts 1905, p. 22.

In 1907 the Legislature again amended our franchise tax law, and in such Act repealed Article 5243i, R. C. S. 1895, as amended. Under the terms of the Act of 1907, annual franchise taxes on foreign corporations, such as this, were levied as follows:

"Sec. 2. Except as herein provided, each and every foreign corporation authorized or that may hereafter be authorized to do business in this State, shall on or before the first day of May of each year pay in advance to the Secretary of State a franchise tax for the year following, which shall be computed as follows, viz: One dollar on each one thousand dollars or fractional part thereof of the authorized capital stock of the corporation up to and including one hundred thousand dollars; and two dollars on each five thousand dollars or fractional part thereof of such stock in excess of one hundred thousand dollars and up to and including one million dollars; and two dollars on each twenty thousand dollars or fractional part thereof of such stock in excess of one million dollars, and up to and including ten million dollars, and two dollars on each fifty thousand dollars of such stock in excess of ten million dollars; unless the total amount of the capital stock of such corporation issued and outstanding, plus its surplus and undivided profits, shall exceed its authorized capital stock, and in that event the franchise tax of such corporation for the year following shall be: two dollars on each one thousand dollars or fractional part thereof, of the authorized capital stock of such corporation, issued and outstanding, plus its surplus and undivided profits, up to and including one hundred thousand dollars; and two dollars on each five thousand dollars, or fractional part thereof of such stock, surplus and undivided profits in excess of one hundred thousand dollars, and up to and including one million dollars; and two dollars on each twenty thousand dollars, or fractional part thereof of such stock, surplus and undivided profits in excess of one million dollars, and up to and including ten million dollars; and two dollars on each fifty thousand dollars of such stock, surplus and undivided profits in excess of ten million dollars; provided that such franchise tax shall not in any case be less than twenty-five dollars." Acts 1907, p. 503, sec. 2.

The franchise tax law as enacted in 1907, supra, so far as applicable here, was carried into the codification of 1911 as Article 7394. In other words, Article 7394, R. C. S. 1911,

levied the same annual franchise taxes on foreign corporations as the Act of 1907.

Our franchise tax laws have been amended since 1911, but such amendments all occurred after the payment of the franchise taxes here involved, and do not affect this case.

For the years from 1907 to 1917, both inclusive, this Company paid annual franchise taxes to the State of Texas as follows:

| | | |
|---|---|---|
| April 15, 1907 | $ | 1,783.00 |
| April 24, 1908 | | 3,566.00 |
| May 1, 1909 | | 3,608.00 |
| April 30, 1910 | | 3,628.00 |
| April 28, 1911 | | 3,672.00 |
| April 30, 1912 | | 3,684.00 |
| April 30, 1913 | | 3,714.00 |
| April 27, 1914 | | 3,614.00 |
| April 24, 1915 | | 3,644.00 |
| May 11, 1915 | | 26.00 |
| April 19, 1916 | | 3,714.00 |
| April 30, 1917 | | 3,714.00 |
| Total | | $38,367.00 |

The franchise taxes paid by this Company on April 15, 1907, amounting to $1,783.00, must have been paid under the Act of 1905, page 22 supra, because it was the Act in force at the time such payment was made. In this connection, we call attention to the fact that the Act of 1907, page 503, supra, was approved May 16, 1907, and took effect ninety days after adjournment. The Act was therefore not in effect at the time this Company paid its 1907 franchise taxes. It appears that the franchise taxes paid by this Company from the years 1908 to 1917, both inclusive, were paid under the provision of the Act of 1907, page 503, supra, and Article 7394, R. C. S. 1911, supra.

The Act of 1905, supra, amending Article 5243i, R. C. S. 1895, provided that any corporation, domestic or foreign, "which shall fail to pay the tax provided for in this Article at the time specified herein shall immediately become liable to a penalty of twenty-five per cent. on the amount of the tax due by it, and if the amount of said tax and penalty be not paid in full on or before the first day of July thereafter, such corporation shall, for such default, foreit its right to do business in the State, which forfeiture shall be consummated without judicial ascertainment by the Secretary of State entering upon the margin of the ledger kept in his office relating to such

corporation the word 'forfeited,' giving the date of such forfeiture; and any corporation whose right to do business may be thus forfeited shall be denied the right to sue or defend in any of the courts of this State, and in any suit against such corporation on a cause of action arising before such forfeiture, no affirmative relief may be granted to such corporation unless its right to do business is revived, as provided in Article 5243j."

By the Act of 1907, page 505, sec. 8, codified as Article 7399, R. C. S. 1911, it was provided:

"Art. 7399. Any corporation, either domestic or foreign, which shall fail to pay any franchise tax provided for in this charter when the same shall become due and payable under the provisions of this chapter, shall thereupon become liable to a penalty of twenty-five per cent of the amount of such franchise tax due by such corporation; and, if the amount of such tax and penalty be not paid in full on or before the first day of July thereafter, such corporation shall for such default forfeit its right to do business in this state; which forfeiture shall be consummated without judicial ascertainment by the secretary of state entering upon the margin of the record kept in his office relating to such corporation, the words, 'right to do business forfeited,' and the date of such forfeiture; and any corporation whose right to do business shall be thus forfeited shall be denied the right to sue or defend in any other courts of this state, except in a suit to forfeit the charter of such corporation; and, in any suit against such corporation on a cause of action arising before such forfeiture, no affirmative relief shall be granted to such corporation, unless its right to do business in this state shall be revived as provided by this chapter. And each and every director and officer of any corporation whose right to do business within this state shall be so forfeited shall, as to any and all debts of such corporation which may be created or incurred, with his knowledge, approval and consent, within this state, after such forfeiture by any such directors or officers, and before the revival of the right of such corporation to do business, be deemed and held liable thereon in the same manner and to the same extent as if such directors and officers of such corporation were partners."

In the case of Looney v. Crane Co., 245 U. S. 178, 62 L. Ed. 330, the Supreme Court of the United States declared and adjudged that Article 3837 and 7394, R. C. S. of Texas, 1911, supra, were unconstitutional and void because in conflict with certain provisions of our Federal Constitution. In such opinion

it was also held that such statutes were interdependent with each other. Also, the rule of law announced in such opinion would, in principle, render unconstitutional and void the franchise tax Act of 1905, page 22, supra.

By the express provisions of the franchise tax Act of 1905 and 1907, supra, and Article 7399, R. C. S. 1911, supra, any domestic or foreign corporation which failed to pay its franchise taxes was subject to the following penalties:

1. A penalty of twenty-five per cent. of such taxes was exacted.

2. If the amount of such taxes and penalties was not paid in full on or before July 1st next after default, the corporation's right to do business in Texas was forfeited. This forfeiture was consummated without any judicial action, by the Secretary of State simply entering a notation on the proper record to that effect.

3. After the forfeiture entry, supra, the corporation affected thereby was denied the right to do business in Texas, and was denied the right to sue or defend any action in the courts of this State, with certain exceptions.

■ An unconstitutional statute is a void statute. In other words, it is not a law at all. It follows that the permit fee or tax paid by this Company in 1909, with the exception of $200.00 which we will later discuss, and the franchise taxes paid for the years 1907 to 1917, both inclusive, were illegally exacted and collected by the State of Texas. Simply stated, so far as this case is concerned, the fees and taxes here involved, with the exception of $200.00, were exacted and collected in violation of the Constitution of the United States.

In the case of Austin National Bank v. Sheppard (Com. of Appls., opinion adopted), 123 Texas 272, 71 S. W. (2d) 242, this Court passed on the very questions of law involved in this case, and in effect held:

■ 1. That a person who pays an illegal tax voluntarily,— that is, without duress, has no valid claim for its repayment; but that a person who pays such tax under duress does have a valid claim for its repayment.

2. That duress in the payment of an illegal tax may be either express or implied, and legal liability to repay or refund is the same in both instances.

■ 3. That where a legislative Act by its terms visits upon a taxpayer the penalties and punishments prescribed by the Acts

here involved for failure to pay an illegal tax, such taxpayer need not take the risk of incurring such penalties and punishments while the invalidity of such tax is being litigated, in order to preserve his rights as a taxpayer under duress.

■ 4. That in the absence of a statute to that effect, it is immaterial to the right of repayment whether or not an illegal tax is paid under protest.

■ 5. That where a corporation paid illegal taxes under circumstances exactly the same as the circumstances under which these taxes were paid, such taxes were paid under duress, and such taxpayer had a valid claim against the State for repayment.

We still adhere to the views expressed in the opinion of Austin National Bank v. Sheppard, supra. A comparison of the facts of the case just mentioned with the facts of this case will show that the facts of the two cases are identical in law. In Austin National Bank v. Sheppard we held that the State was legally liable for the repayment of the taxes there involved. It must follow that the State is liable in the same way in this action.

■ As we interpret it, the opinion of the Court of Civil Appeals in the instant case holds that the Company cannot recover for these taxes because it was guilty of laches. In this connection, we interpret such opinion to hold that this Company was guilty of laches because it continued to pay the taxes exacted by these unconstitutional Acts for ten years without, during such time, making any effort to have judicial ascertainment had of the invalidity thereof. We are unable to give assent to such holding. It is settled as the law of this State that where a legislative Act by its terms visits upon a taxpayer the penalties and punishments prescribed by these Acts for failure to pay an illegal tax, such taxpayer need not take the risk of incurring such penalties and punishments, while the invalidity of such taxes are being judicially ascertained, in order to preserve his rights as a taxpayer under duress. Austin National Bank v. Sheppard, supra. To our minds, the holding of the Court of Civil Appeals in this case regarding laches is in absolute conflict with our holding in Austin National Bank v. Sheppard, supra. Furthermore, even if we should uphold the rule of law as announced in the opinion of the Court of Civil Appeals, which we do not, still it could not possibly be said that this Company was guilty of laches with regard to the payment of all the illegal taxes here involved.

■ The resolution authorizing the State to be sued in this instance attempts to make an appropriation to pay any final judgment which may be obtained by the Company against the State by the following provision: "* * * and there is hereby appropriated out of the Treasury such funds as may be necessary, not heretofore appropriated, to pay any· final judgment which may be obtained by reason of the permission to sue the State herein granted, * * *."

Section 6 of Article 8 of our Constitution,· among other things, in substance provides:

(a) That no money shall be drawn from the Treasury but in pursuance of a specific appropriation; and
(b) That no appropriation of money shall be made for a longer term than two years.

The State contends that this attempted appropriation violates both of the above-mentioned constitutional provisions.

As just stated, one of the provisions of Section 6 of Article 8 of our Constitution requires all appropriations of money out of the State Treasury to be specific. It is settled that no particular form of words is required to render an appropriation specific within the meaning of the constitutional provision under discussion. It is sufficient if the Legislature authorizes the expenditure by law, and specifies the purpose for which the appropriation is made. An appropriation can be made for all funds coming from certain sources and deposited in a special fund for a designated purpose. In such instances, it is not necessary for the appropriating Act to name a certain sum or even a certain maximum sum. 38 Tex. Jur., pp. 844-845, sec. 27, and authorities there cited.

■ In spite of the above rules of law, we think that this attempted appropriation falls short of meeting the constitutional requirement that it be *specific*. It is absolutely conditional or contingent as to whether it will ever become effective, depending on when and if a final judgment shall be awarded. It is indefinite as to amount, or even as to a maximum amount, leaving that matter, not to the Legislature, but to another branch of the Government, the courts to determine. We do not believe that such an appropriation of money out of the State Treasury meets the constitutional requirements that it shall be *specific*.

■ As already. shown, our Constitution prohibits the Legislature from making any appropriation of money out of the State Treasury for a longer term than two years. A reading of this

appropriation shows it was intended to take effect only when a final judgment shall be obtained. The appropriation was finally passed by the Legislature in May, 1937. It is now 1940. The constitutional biennium provided by the Constitution has already elapsed, and the appropriation is not yet effective because no final judgment has yet been obtained. This appropriation can therefore now never become effective. To uphold an attempted appropriation, such as this, after the two-year biennium has elapsed, would violate the very fundamental purpose of the two-year constitutional provision under discussion, and permit one Legislature to make appropriations of money in unlimited and undetermined amounts, and to take effect at unlimited and undetermined times in the future, regardless of how long that time might be.

■ We think that the part of the resolution which authorizes the State to be sued is severable from the part which attempts to make an appropriation. We therefore hold that the part giving authority to sue can stand, but that the part attempting to appropriate must fall.

■ The State contends that the resolution is void because it contains no title. It is true that it is absolutely without a title. We think, however, that there is no constitutional requirement that resolutions of this character shall contain a title.

■ The State contends that the Company in 1909 was due to pay a permit fee of $200.00, and that if it is given a judgment regarding the permit fee paid by it in 1909, such $200.00 should be deducted therefrom. We sustain this contention. At the time the permit fee for 1909 was paid, Article 2437, R. C. S. 1895, was in effect,—this because the subsequent unconstitutional Acts on such subject did not repeal such Article.

The State contends that the resolution made the basis of this suit does not authorize the State to be sued for the franchise taxes paid by the Company on April 15, 1907, amounting to $1783.00. We have already demonstrated that such taxes were paid under the franchise tax Act of 1905. The franchise tax Acts of 1907 did not go into effect until after the franchise taxes paid in 1907 had already become due, and had already been paid. The suit of Looney v. Crane Company, supra, in the United States Supreme Court did not involve the constitutionality of the franchise tax Act of 1905. It did involve the constitutionality of the Act of 1907, codified as Article 7394, R. C. S. 1911. It is true that the principles of constitutional law as announced in Looney v. Crane Company, supra, which con-

demned as repugnant to the Federal Constitution the Act of 1907, Article 7394, R. C. S. 1911, would also, in principle, condemn as repugnant to the Federal Constitution the Act of 1905, but the case did not involve the last-named Act, and the court did not declare it unconstitutional. Simply stated, from a Federal constitutional standpoint the two Acts are alike, but the Act of 1905 was not involved or passed on in the Crane Company case.

The resolution giving permission to sue the State in this instance, in the second paragraph thereof, recites that National Biscuit Company "* * * paid filing fees and franchise taxes* * * continuously from 1907 to 1917 under then existing franchise and filing fee laws, which have been declared unconstitutional by the Supreme Court of the United States, * * *." The seventh paragraph of such resolution grants National Biscuit Company permission "* * * to bring suit against the State of Texas * * * to determine definitely and accurately what amount of taxes and filing fees may have been heretofore illegally exacted of National Biscuit Company by the State of Texas and paid to the State of Texas, if any, as filing fees and franchise taxes under any *unconstitutional law as hereinabove mentioned.*" (Emphasis ours.) What does the phrase, "unconstitutional law as hereinabove mentioned," mean or refer to? Certainly its meaning or effect is to define what the Company may sue the State for. It limits the right to sue the State for the filing fees and franchise taxes paid under any such "unconstitutional law as hereinabove mentioned." What unconstitutional law is "hereinabove mentioned"? Certainly they are the laws "which have been declared unconstitutional by the Supreme Court of the United States." The Act of 1905, under which this Company paid franchise taxes on April 15, 1907, has never been declared unconstitutional by the Supreme Court of the United States. It follows that this resolution cannot be given effect to grant permission to sue for the taxes paid in 1907 under the Act of 1905.

The judgments of the Court of Civil Appeals and district court are both reversed, and judgment here rendered as follows:

(a) National Biscuit Company is awarded judgment against the State for $55,040.00, less $200.00.

(b) National Biscuit Company is awarded judgment against the State for the franchise taxes paid by it for the years from 1908 to 1917, both inclusive, amounting to $36,584.00.

(c) National Biscuit Company is denied any recovery against the State for the franchise taxes paid by it in 1907, amounting to $1,783.00.

(d) It is adjudged that no valid appropriation exists to pay the judgment in favor of National Biscuit Company hereinabove awarded.

Opinion delivered January 24, 1940.