

# THE ATTORNEY GENERAL
## OF TEXAS

GERALD C. MANN
XXXXXXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable Geo . W. Cox, M.D.
State Health Officer
Austin, Texas

Dear Sir:

Opinion No. O-4224
Re: Whether the balance in Vital
Statistics Fund may be devoted
to the construction of a build-
ing for the use of the Bureau
of Vital Statistics.

In your letter of November 24th you explain the recent great in-
crease in the work of the Bureau of Vital Statistics which makes
necessary enlarged facilities for carrying on the work of the
Bureau and storing its records.

After setting out the applicable provisions of the current appro-
priation for the Bureau of Vital Statistics contained in Senate Bill
No. 423, Regular Session, 47th Legislature and in the general sta-
tutes pertaining to the Bureau, you request our opinion on the fol-
lowing question:

"We shall ask you to advise us whether the above funds, to-
gether with any additions thereto deposited during the biennium
beginning September 1, 1941, can be used in c onstructing a
building for offices and working space for the employees and ·
personnel of the Bureau of Vital Statistics, and a fire proof
vault for the protection and safe preservation of the records
and files of that Bureau, as is provided for under Article
4477, Rule 35a, R.C.S."

We quote the provisions of the general law and current appropria-
tion bill and the existing facts applicable to this problem, as set
out in your letter:

"Rule 35a of Article 4477, R.C.S. State of Texas, in part
reads as follows: 'The Board of Control shall provide suitable
offices for the Bureau of Vital Statistics in the State Cap-
itol or in other suitable buildings at Austin which shall be
properly equipped with fire proof vault and filing cases for
the permanent and safe preservation of all records made and
returned under this Act.'

"Senate Bill 423, Regular Session, 47th Legislature, Sections 80 to 97, appropriated various sums for salaries for employees of the Bureau of Vital Statistics, and in addition thereto appropriated certain fees as follows: 'Subject to the limitations appearing at the end of this Act all fees received under the provisions of Article 4477, Rule 54a and deposited to the Vital Statistics Fund are hereby appropriated for each year of the biennum beginning September 1, 1941, for the uses and purposes prescribed by the Above Act, and any amendments thereto, including salaries, maintenance, travel and contingent expense. This appropriation shall be in addition to the itemized appropriation herein made for the Bureau of Vital Statistics.'

"Rule 54a of Article 4477, R.C.S. reads in part as follows: "And the State Registrar (Registrar of Vital Statistics) shall keep a true and correct account of all fees by him received under these provisions, and turn the same over to the State Treasurer at the close of each month, and all such fees shall be kept by the State Treasurer in a special and separate fund to be known as the "Vital Statistics Fund", and the amount so deposited in this fund may be used for defraying expenses incurred in the enforcement and operation of this Act.'

"For your information may we point our that the Bureau of Vital Statistics has no inspectors or field workers who administer or enforce the Vital Statistics Law in any manner whatsoever. The entire enforcement and operation of this Act is carried on through the office personnel and the enforcement and operation consists of properly checking records, filing same, and seeing that these records are preserved, their chief problem of enforcement being the storing of these records in places where they are not subject to fire hazards, loss and theft.

"As of November 21, 1941, we are advised by the State Treasurer that the Vital Statistics Fund has a balance of $30,251.34. The collections of fees as averaged for the twelve months ending August 31, 1941, are $1,912.00 per month. The expenditure of the above balance and a portion of the monthly income from fees would not reduce the efficiency of the Bureau of Vital Statistics."

The answer to your question turns upon this point: whether the proviso in the appropriation bill, "all fees received under the provisions of Article 4477, Rule 54a, and deposited to the Vital Statixtics Fund are hereby appropriated...for the uses and purposes prescribed by the above Act, and any amendments thereto, including salaries, maintenance, travel and contingent expense" may be construed so as to authorize the Bureau of Vital Statistics to devote the balance of $30,251.34 in its special fund, and subsequent additions thereto, to the construction of a building for use of the

Bureau, in the absence of an express legislative appropriation for such purpose, We think it clearly may not be so construed. As said by the Austin Court of Civil Appeals in State v. Haldeman, 163 S.W. 1020, (writ of error refused) at page 1022:

> "...The Legislature might authorize commissioners to contract for the erection of a public building of such a character and at such cost as to them might seem best, but such a proceeding would, to say the least of it, be unwise, and such has not been the usual course with reference to public buildings in Texas. It is well known that it is the custom with Legislatures to appoint committees to investigate the needs of public institutions, to hear evidence and visit and inspect such institutions, and to pass appropriation bills for definite amounts for the support, maintenance, and erection of buildings therefor....."

In the Haldeman case the court held that the Legislature, having appropriated $47,000 for the erection of buildings at the State Lunatic Asylum, any additional sum expended thereon was unauthorized, and was not supported by pre-existing law as required by Article III, Section 44, of the Texas Constitution, so that no subsequent appropriation could be made to pay for the excess cost of the buildings above the amount originally appropriated. The court refused to recognize any authority, implied or otherwise, in the Board of Directors to authorize any enlargement of the buildings as authorized by the Legislature. Said the court:

> "We do not think by the passage of the appropriation bill above referred to, wherein the specific amount of $47,500 was appropriated for the buildings for the lunatic asylum, the Legislature intended to grant the directors of said institution discretion to incur liability on the part of the state for more than this amount......"

To the same effect is the holding in Nichols v. State, 32 S.W. 452. See also Ft. Worth Calvary Club v. Sheppard, 83 S.W. (2d) 660.

Article VIII, Section 6, of the Constitution of Texas, provides: "No money shall be drawn from the Treasury but in pursuance of specific appropriations made by law..." We do not believe that the language of the appropriation to the Bureau of Vital Statistics, which reads:"...for the uses and purposes prescribed by the above Act...including salaries, maintenance, travel and contigent expense" can be construed as a "specific appropriation" for the construction of a public building as that term is used in Article VIII, Section 6. Pickle v. Finley, 91 Tex. 484, 44 S.W. 480; National Biscuit Co. v. State, 134 Tex. 293, 135 S.W. (2d) 687; County of Dallas v. McCombs, 135 Tex. 272, 140 S.W. (2d) 1109.

We have no doubt of the urgent necessity for enlarged and permanent quarters to house  the growing and important functions of the Bureau of Vital Statistics, but we are of the opinion that it will require an express appropriation of a sum certain by the Legislature for such specific purpose, either out of the moneys in the special "Vital Statistics Fund" or out of the general fund before any money may be withdrawn from the State Treasury for the purpose of construing the building about which you inquire.

Yours very truly

APPROVED DEC. 2, 1941
GROVER SELLERS                ATTORNEY GENERAL OF TEXAS
FIRST ASSISTANT
ATTORNEY GENERAL

By    Walter R. Koch
WRK:lm:ml                          Assistant