

# THE ATTORNEY GENERAL
# OF TEXAS

**PRICE DANIEL**
ATTORNEY GENERAL

AUSTIN, TEXAS

August 17, 1949

Hon. J. E. McDonald
Commissioner of Agriculture
Land Office Building
Austin, Texas

Opinion No. V-887

Re: Construction of H.B. 420,
Acts 51st Legislature

Dear Sir:

Your request for an opinion, in part, reads as follows:

"House Bill No. 420, known as the '2, 4-D Weed Killer Act', was passed by the 51st Legislature. You will find a copy of same enclosed herewith.

"The last paragraph, Sec. 6, of said H. B. No. 420, sets up a Special Fund in the State Treasury designated 'The 2,4-D License Fund.' In this same paragraph, the wording indicates that all of the fees collected under the provisions of this Act, shall be made available to the Commission of Agriculture for the purpose of defraying expenses which accrue in the administration of the Act. However, the State Comptroller maintains that the wording, in this paragraph, is not specific enough to substantiate him to pay claims for expenses submitted to him and to be paid out of this particular fund, since the wording does not say: 'and the sum or sums of money accruing under the provisions of this Act are hereby appropriated for the use of the Commissioner of Agriculture in carrying out the provisions of this Act,' or some other suitable or appropriate words.

"We believe that it was the intent of the Legislature to appropriate all or so much of these funds as might be needed in the administration of this Act; and that such funds are to be paid out in the usual manner; namely, upon properly executed bills approved by the Commissioner of Agriculture and presented to the State Comptroller for warrants to be drawn on the State Treasury in the usual manner."

House Bill No. 420, Acts 51st Legislature, regulating the sale and use of 2, 4-D and other hormone type herbicides, became effective June 23, 1949. The Act confers upon the Commissioner of Agriculture the duty of administering its provisions, including the duty of issuing the licenses provided for therein, collecting the fees therefor as provided in Section 7 thereof, and expending the money so collected for expenses incurred in the performance of the duties so imposed.

The last paragraph of Section 6(f) of the Act reads:

"All license fees collected by the Commissioner of Agriculture under the provisions hereof shall be placed in a special fund in the State Treasury to be known as 'The 2, 4-D License Fund,' which fund shall be available to the Commissioner of Agriculture for the purpose of defraying expenses which accrue in the administration of the provisions hereof and same shall be paid out by the State Treasurer upon warrants based upon vouchers issued therefor by the Commissioner of Agriculture."

Section 6, Article VIII of the Constitution of Texas, in part, reads:

"No money shall be drawn from the Treasury, but in pursuance of specific appropriations made by law; nor shall any appropriation of money be made for a longer period than two years."

In the case of Pickle v. Finley, State Comptroller, 91 Tex. 484, 44 S.W. 480 (1898), Chief Justice Gaines, speaking for the court said:

"It is clear that an appropriation need not be made in the general appropriation bill. It is also true that no specific words are necessary in order to make an appropriation; and it may be conceded, that an appropriation may be made by implication when the language employed leads to the belief that such was the intent of the Legislature."

We quote from the opinion of the court in the case of National Biscuit Co. v. State of Texas, 134 Tex. 293, 135 S.W.2d 687 (1940), as follows:

"As just stated, one of the provisions of Sec. 6 of our Constitution requires all appropriations of money out of the State Treasury to be specific. It is settled that no particular form of words is required to render an appropriation specific within the meaning of the constitutional provisions under discussion. It is sufficient if the Legislature authorizes the expenditure by law, and specifies the purpose for which the appropriation is made. An appropriation can be made for all funds coming from certain sources and deposited in a special fund for a designated purpose. In such instances, it is not necessary for the apportioning Act to name a certain sum or even a maximum sum. 38 Tex. Jur. pp. 844-845, Sec. 27, and authorities there cited."

The Thirty-fifth Legislature established the State Highway Department; created the State Highway Commission and the office of State Highway Engineer and prescribed their respective powers and duties; directed the Commission to place and adopt a comprehensive system of State Highways and to promote the construction thereof, and to effectuate that purpose provided for the registration and licensing of all motor vehicles and prescribed the fees to be collected therefor. (Acts 1917, Ch. 190, p. 416). The pertinent part of section 23 of that Act read:

"Sec. 23. All funds coming into the hands of the Highway Commission, derived from the registation fees hereinbefore provided for, or from other sources, as collected, shall be deposited with the State Treasurer to the credit of a special fund designated as 'The State Highway Fund,' and shall be paid only on warrants issued by the State Comptroller upon vouchers drawn by the Chairman of the Commission and approved by one other member of the Commission, such vouchers to be accompanied by itemized sworn statements of the expenditures, except when such vouchers are for the regular salaries of the employes of the Commission. The said State Highway fund shall be expended by the State Highway Commission for furtherance of public

road construction and the establishment of a system of State highways, as contemplated and set forth in this Act. . . ."

The question of whether this section met the mandatory requirements of Section 6, Article VIII of the Constitution so as to constitute a valid appropriation of the moneys collected in pursuance to the provisions of the Act was before the court in Atkins v. State Highway Department, 201 S.W. 226, 232 (Tex. Civ. App. 1917). We quote from the opinion of the court in that case:

"We think the Legislature had the power to make the appropriation, here involved, in the manner that it did, and we hold that the provisions of the act in regard thereto constitute a valid appropriation of the funds mentioned to and for the purposes stated in the act. It is not to be understood, however, that we hold the appropriation good for a longer term than two years. This statement is made in view of section 6, Art. 8, of the Constitution which provides 'Nor shall any appropriation of money be made for a longer term than two years.' "

Since the provisions of Section 6(f) of H. B. No. 240 are so similar to and in no material respect different from the provisions of Section 23 of the Act of 1917, creating the State Highway Department, we think our answer to your question is controlled by the opinion in Atkins v. State Highway Department, supra. Therefore, it is the opinion of this office that H. B. No. 420, Acts 51st Legislature, made a valid appropriation of the money collected thereunder by the Commissioner of Agriculture for the purposes therein stated for a period of two years, beginning June 23, 1949, and ending June 22, 1951.

## SUMMARY

House Bill No. 420, Acts 1949, 51st Legislature, made a valid appropriation of the money collected thereunder by the Commissioner of Agriculture for the purposes stated therein for a period of two years, beginning June 23, 1949, and ending June 22, 1951.

Pickle v. Finley, 91 Tex. 484, 44 S.W. 480 (1898);
National Biscuit Co. v. State, 134 Tex. 293, 135 S.W.
2d 687 (1940); Atkins v. State Highway Department,
201 S.W. 226 (Tex. Civ. App. 1917); Tex. Const. Art.
VIII, Sec. 6.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Bruce W. Bryant
Assistant

BWB:mw:tb

APPROVED:

ATTORNEY GENERAL