

# THE ATTORNEY GENERAL
## OF TEXAS

**JOHN L. HILL**
**ATTORNEY GENERAL**

AUSTIN, TEXAS 78711

Overruled by H-116
When conflict

June 12, 1973

Hon. David Wade, M. D., Commissioner
Texas Department of Mental Health and
    Mental Retardation
Box 12668, Capitol Station
Austin, Texas 78711

Opinion No. H- 50

Re: Whether Department
of Mental Health and
Mental Retardation
can use appropriated
funds to pay wages for
a period of time when
it is claimed the em-
ployee was unlawfully
terminated etc., and
related questions.

Dear Dr. Wade:

You have requested the opinion of this office in answer to the following
questions:

> "1. Is this Department authorized to use appropriated
> funds to pay back wages to a claimant pursuant to a
> conciliation agreement under Public Law No. 92-261
> or Executive Order 11246 . . . .?
>
> "2. If your answer . . . is in the affirmative, from
> what source . . . .?
>
> "3. If your answer . . . is in the affirmative, can
> such wages be paid for any period of time subsequent
> to a rejected offer by this Department to reemploy
> . . . , promote . . . or employ the individual . . .?
> In answering . . . , please consider . . . situations:
>
>> (a) Where it was agreed that full wages
>> be paid for the period prior to such offer
>> . . . ; or

p. 207

(b)  Where it was not agreed that full wages
be paid for the period . . . and . . . the
claim for such prior wages was preserved; or

(c)  Where it was not agreed that full wages
be paid for the period . . . and the . . .
claim for such prior wages was required to
be forfeited as a condition of the offer . . . ."

Section 6 of Article 8 of the Texas Constitution provides (in appropriate part):

"No money shall be drawn from the Treasury but
in pursuance of specific appropriations made by law; nor
shall any appropriation of money be made for a longer
term than two years . . . ."

There must be a specific appropriation for the purpose for which moneys are to be drawn from the State Treasury. National Biscuit Co. v. State, 135 S. W. 2d 687 (Tex. 1940); State v. Angelina County, 150 S. W. 2d 379 (Tex. 1941); Bullock v. Calvert, 480 S. W. 2d 367 (Tex. 1972). The purpose for which such payments are sought must be matched against the purposes for which funds have been appropriated.

Pursuant to a conciliation agreement under Public Law No. 92-261 or an agreement under Executive Order 11246, payment of "back wages" is to be made to a claimant as compensation for a period of time that the claimant allegedly was unlawfully terminated, denied promotion or denied employment by the Department because of race, color, religion, sex or national origin. A conciliation agreement is a contract. Funds would be available only if the contract is one within the power of your Department to make. Absent such authority, any contract made would be void.

Article 3, Section 44, Texas Constitution, provides in part, "The Legislature . . . shall not . . . grant by appropriation or otherwise, any amount of money out of the Treasury of the State, to any individual, on a claim, real or pretended, when the same shall not have been provided for

by pre-existing law . . .," Fort Worth Cavalry Club v. Sheppard, 83 S.W. 2d 660 (Tex. 1935); Bullock v. Calvert, supra.

The Equal Employment Opportunity Commission (42 U.S.C. Section 2000 e-4), upon the filing of charges alleging an employer has engaged in unlawful employment practices, shall investigate the charge, and, if it determines that there is reasonable cause to believe that the charge is true, it "shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." 42 U.S.C. Section 2000 e-5(b). We assume here that the conciliation agreement under Public Law No. 92-261 to which you refer would be an agreement arrived at under such circumstances.

That Act defines certain employment practices as unlawful (42 U.S.C. Section 2000 e-2) and creates a civil action which may be pursued after exhaustion of specified administrative remedies, including an attempt to secure a satisfactory conciliation agreement by negotiations between the Commission and the employer (42 U.S.C. Section 2000 e-5).

The powers of the Texas Department of Mental Health and Mental Retardation are set forth in Article 5547-202, Vernon's Texas Civil Statutes. The power to enter into such a contract does not appear and there is no pre-existing law specifically authorizing such payments. Although the Legislature has authorized some agencies to settle claims in certain situations (see, for instance Articles 796-802, 828, 835f, 2351 (10), 6252-19 Section 10, V.T.C.S.), we find no such power vested in the Department of Mental Health and Mental Retardation.

The current appropriations bill allocates no funds for payment under such a contract. The only allocation which possibly could permit such payment is line item 12 of the appropriation to the Department of Mental Health and Mental Retardation, reading as follows:

"12. Other Operating Expenses, including main-
tenance and repairs, court costs, $25 per
diem for Board members, capital outlay and
all other activities for which no other pro-
visions are made (including Legal and Claims
Division) but excluding airplane maintenance
and operating expenses."

Senate Bill No. 1, Third Called Session, 1972, p. II-8. Since no pre-existing law authorizes the Department to enter the type contract under discussion, it is our conclusion that payment thereunder would not constitute an "operating expense" within the above appropriation. It is our opinion that the Department, by reason of Article 8, Section 6, Texas Constitution, is not authorized to use appropriated funds for payments under such conciliation agreements based on avoidance of "damages."

We turn now to a discussion of conciliation agreements negotiated under Executive Order 11246. Section 202 of it provides for inclusion of a lengthy provision in government contracts whereby the contractor (such as the Department) agrees not to discriminate against employees or applicants because of race, color, religion, sex, or national origin, and to comply with certain rules and follow certain practices therein enumerated or referred to, for the purpose of encouraging equal employment opportunities. Section 209 of the Order sets forth sanctions and penalties which may be imposed upon violation of the non-discrimination provisions of the contract. Section 209(a)(5) permits cancellation or suspension of a contract for failure of the contractor to comply with the non-discrimination clauses, but Section 209(b) requires that an attempt to secure compliance by methods including conciliation be made before the contract is cancelled or suspended under subsection (a)(5). We assume for purposes of this part of the discussion that the conciliation agreement under Executive Order 11246 to which you refer is an agreement arrived at under such circumstances.

The powers of the Texas Department of Mental Health and Mental Retardation are set forth in Article 5547-202, Vernon's Annotated Civil Statutes. Section 2.15 thereof provides as follows:

> "The Department may negotiate with any agency of the United States in order to obtain grants to assist in the expansion and improvement of mental health and mental retardation services in this state."

We assume the original contracts under consideration were negotiated under Section 2.15 and contain the non-discrimination clause provided for in the Executive Order. If such is the case, then it is apparent that a

renegotiation under Section 209(b), guaranteeing future compliance with the original provisions and certain "back pay" concessions in exchange for forgiveness and waiver of any prior violations, would be within the power of the Department under Section 2.15, especially if matching federal grants of money are involved, in view of the adoptable language of Article 3, Section 51a of the Constitution. We think that under such an agreement the Department would be authorized to use appropriated funds for payments as required by the contracting federal agency. Such payments, however, would not be paid as "back wages, " since they would not be in payment for services rendered to the Department. Instead, they should be understood as contractual adjustments necessary to secure continued benefits under federal contracts. Such payments therefore should be made from the funds appropriated in connection with securing the federal contract for the continuation of which such concessions are to be made.

In answer to your third question it is our opinion that payments, if made, should be made according to negotiated terms the Department considers fair. In this connection it should be noted that Section 209(b) of Executive Order 11246 does not specifically mention "back pay" concessions, but merely directs that the contracting federal agency "shall make reasonable efforts within a reasonable time limitation to secure compliance with the contract provision of this Order by methods of conference, conciliation, mediation, and persuasion . . . before a contract shall be cancelled or terminated. . . ."

## SUMMARY

The Department of Mental Health and Mental Retardation is not authorized by pre-existing law to use appropriated funds to pay "back wages" to claimants under Public Law No. 92-261 pursuant to extra-judicial "conciliation agreements, " but it is authorized to adjust its contractual differences with the federal government pursuant to Executive Order 11246, which legal adjustments may encompass arrangements having the same practical effect as

"back wages" payments. Such adjustments may be made upon whatever terms (consistent with its original authority) the Department of Mental Health and Mental Retardation considers just and fair.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee