

# THE ATTORNEY GENERAL
# OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

July 27, 1990

Mr. William D. Taylor
Interim Executive Director
Department of Commerce
P. O. Box 12728
Capitol Station
Austin, Texas 78711

Opinion No. JM-1196

Re: Whether interest earned on monies in the Texas Exporters Loan Fund may be used to administer the Texas Exporters Loan Program (RQ-1786)

Dear Mr. Taylor:

You ask about the proper construction of House Bill 369, which created the Texas Exporters Loan Fund.[1] Specifically, you ask whether interest earned by the deposit of money in the fund created by that bill may be "used" to administer the program authorized by that bill. The bill provides that the costs of administering the program must be paid by interest earned by the deposit of money in the fund and by fees collected in connection with the program. However, a rider to the appropriations act provides that administration of the program shall be financed from fees generated from the program. The rider omits any reference

---

1. Senate Bill 223, which was a general "clean up" bill, made necessary corrections to Title 4 of the Government Code, conformed Title 4 of the Government Code to certain acts of the 70th Legislature, and also codified in a nonsubstantive way various statutes in that title. Acts 1989, 71st Leg., ch. 4, at 200. Article 3 of the bill added Subtitle F to the Government Code, which deals with commerce and industrial development. Chapter 481 of Subtitle F codified various statutes governing the Texas Department of Commerce. In addition to Senate Bill 223, the 71st Legislature enacted fifteen other bills that either amended or added sections to chapter 481, including House Bill 369, which added section 481.059. Section 481.059 of the Government Code was not amended by any of the other bills enacted by the 71st Legislature.

to interest generated by the deposit of the money in the fund.

House Bill 369 added section 481.059 to the Government Code, which creates the Texas Exporters Loan Fund and authorizes the Texas Department of Commerce to use that fund to guarantee loans made by private lenders to certain businesses under certain conditions. Acts 1989, 71st Leg., ch. 818, § 1, at 3751. Section 481.059 provides in pertinent part:

> (a) The Texas exporters loan fund is a fund in the state treasury. <u>The fund consists of</u> appropriations or transfers made to the fund, guarantee fees, other money received from operation of the program established by this section, and <u>interest paid on money in the fund</u>. Money in the fund may be used only to carry out the purposes of this section. If any appropriations are made to the department from the general revenue fund to carry out this section for a fiscal year, at the end of that fiscal year the unexpended balance of those appropriations shall be transferred to the Texas exporters loan fund.
>
> . . . .
>
> (g) The department shall administer the program established by this section in the same manner as its other programs under this chapter, except as provided otherwise by this section. <u>The costs of administering the program must be paid by interest earned on money in the fund and by fees collected in connection with the program.</u> (Emphasis added.)

A rider to the appropriations act passed during the same legislative session limits the funding source for paying the costs of administration of the program only to those fees generated by the program. Rider 37 provides the following:

> TEXAS EXPORTERS LOAN FUND. Contingent upon the final passage of Senate Bill 165, Seventy-first Legislature, or similar legislation

> relating to the Texas Exporters Loan Fund, there is hereby appropriated in fiscal year 1990 to the Texas Department of Commerce $2,000,000 out of the General Revenue Fund to establish the Texas Exporters Loan Fund. <u>Administration of the program shall be financed from fees generated from the Texas Exporters Loan Fund.</u>[2]

Acts 1989, 71st Leg., ch. 1263, art. I, at 5169.   (Emphasis added.)

You suggest that there is an irreconcilable conflict between the bill and the rider and that the bill controls. In your letter requesting an opinion from this office, you state:

---

2.   The bill to which the rider refers, Senate Bill 165, differed from the bill finally enacted by the legislature, House Bill 369, in one important respect that is relevant to your inquiry. Subsection (g) of the committee substitute for Senate Bill 165, which governed the administration of the program, provided: "The department shall administer the program established by this section in the same manner as its other programs under this article, except as provided otherwise by this section." Senate Bill 165 omitted any reference to using the fees collected in connection with the program (or, for that matter, any reference to using interest earned from the deposit of the money in the fund). Senate Bill 165 was not enacted by the legislature; its house counterpart, House Bill 369, was.

Rider 37, which was made effective expressly upon the passage of S.B. 165 or a comparable bill, apparently was drafted to reflect the language set forth in S.B. 165, not the language contained in H.B. 369. Thus, the bill ultimately enacted by the legislature creating the fund required that interest earned by the deposit of the money in the fund comprise one of the two funding sources that the legislature could appropriate to pay for the costs of administering the loan program. Rider 37 further limited for the duration of this biennium the funding source from which the program's administrative costs could come, <u>i.e.</u> only to the fees generated by the program.

The statute, Section 481.059, clearly provides that such interest may be used for administration and that the interest is part of the Texas Exporters Loan Fund. The Fund, including the interest, is appropriated to Commerce in SB 222 [the appropriations act]. As was the case in <u>Bullock v. Calvert</u>, 480 S.W.2d 367 (Tex. 1972), there is elsewhere in the statutes authority to use the interest in the Fund for administration.[3]  [Section 481.059(g) of the Government Code.] <u>Although the use of the interest in the Fund is not specifically mentioned in SB 222, both legislative intent and the general principle under Article III, Sec. 35 of the Texas Constitution that general legislation controls over conflicting language in an appropriations act, indicate that Commerce is authorized to use the interest for administration of the Texas Exporters Loan Fund program.</u>  [TEX. ATT'Y GEN. OP. NOS. V-1254 (1951); M-1041 (1972); TEX. ATT'Y GEN. LA NO. 72 (1973).]  (Emphasis added.)

We are unclear whether, by asking whether the commission may "use" the interest that accrues from the deposit of the money, you are asking whether the bill supersedes the rider and thereby <u>authorizes</u> the legislature to appropriate interest earned by the deposit of the money in the fund for the purposes of administering the program, or whether you are asking whether the legislature <u>actually</u> has appropriated such interest. For purposes of this opinion, we assume that you are asking whether the legislature has appropriated the interest earned, regardless of whether that appropriation has been effected by the general law or the appropriations bill. We conclude that section 481.059 of the Government Code acts as a limitation on the sources from which the legislature may appropriate

---

3. We note that in <u>Bullock v. Calvert</u>, 480 S.W.2d 367 (Tex. 1972), the Texas Supreme Court expressly declined to grant the requested petition of mandamus to compel the comptroller to pay out of state funds the expense of a party primary election because there was <u>no</u> statute empowering the secretary of state to so expend state money.

moneys for administration. The requirement that administrative costs "must be paid" from certain sources means that no other source of funding may be used for administrative costs. We conclude that the legislature has not appropriated accrued interest generated by the deposit of money in the fund; therefore, we answer your question in the negative.

Section 6 of article VIII of the Texas Constitution governs the withdrawal of money from the state treasury and provides in pertinent part:

> No money shall be drawn from the Treasury but in pursuance of specific appropriations made by law; nor shall any appropriation of money be made for a longer term than two years.

Section 6 has been construed consistently to require an appropriation by the legislature before any money can be paid out of the state treasury. Lightfoot v. Lane, 140 S.W. 89 (Tex. 1911); Pickle v. Finley, 44 S.W. 480 (Tex. 1898). An appropriation may be effected either by the constitution,[4] by statute,[5] or by a general appropriation bill.[6]

---

4. See, e.g., Tex. Const. art. III, § 49-b (establishing veterans' land fund and appropriating all moneys in the fund for purchase of land to sell to veterans.)

5. See, e.g., Acts 1959, 56th Leg., ch. 150, § 4, at 260 (amending V.T.C.S. art. 695c, § 27). In an earlier opinion, this office declared:

> This does not mean that general legislation may not contain an appropriation which is merely incidental to and necessary to carry out the subject and purpose of the general law. [Citation omitted.] Neither does it mean that a general appropriation bill may not contain general provisions and details limiting and restricting the use of the funds therein appropriated, if such provisions are necessarily connected with and incidental to the appropriation and use of the funds and if they do not conflict with or amount to general

(Footnote Continued)

See generally Susman, Fiscal and Constitutional Limitations, 44 Tex. L. Rev. 106 (1965). Regarding whether certain language is sufficient to effect an appropriation, the Texas Supreme Court long ago declared:

> It is clear that an appropriation need not be made in the general appropriation bill. It is also true that no specific words are necessary in order to make an appropriation; and it may be conceded, as contended, that an appropriation may be made by implication when the language employed leads to the belief that such was the intent of the Legislature.

Pickle v. Finley, supra, at 480-81. In what is probably the leading case in this area, National Biscuit Co. v. State, 135 S.W.2d 687 (Tex. 1940), the Texas Supreme Court declared:

> As just stated, one of the provisions of Sec. 6 of article 8 of our Constitution requires all appropriations of money out of the State Treasury to be specific. It is settled that no particular form of words is

---

(Footnote Continued)
    legislation.   [Citations omitted.]

Attorney General Opinion V-1254 (1951).

6.   In an earlier opinion, this office declared:

> If a bill does more than set aside a sum of money, provide the means of its distribution, and to whom it shall be distributed, then it is a general law. [Citations omitted.] The distinction between a general appropriation bill and general legislation has been recognized in this State in the simple fact that the former merely sets apart sums of money for specific objectives and uses while the latter does more than merely appropriate and limit the use of funds. General legislation constitutes a separate subject and cannot be included within a general appropriations bill.   [Citations omitted.]

Attorney General Opinion M-1199 (1972).

> required to render an appropriation specific within the meaning of the constitutional provision under discussion.  It is sufficient if the Legislature authorizes the expenditure by law, and specifies the purpose for which the appropriation is made.  An appropriation can be made for all funds coming from certain sources and deposited in a special fund for a designated purpose.  In such instances, it is not necessary for the appropriating Act to name a certain sum or even a certain maximum sum.

Id. at 693.

The issue is whether the language set forth in either the statute or rider effect an appropriation of earned interest consistent with the requirements of section 6 of article VIII of the Texas Constitution.  The language of neither the statute nor the appropriations act rider explicitly effects such an appropriation; the issue is whether such language effects an appropriation by implication. Based upon our examination of prior authority, we conclude that neither the language of section 481.059 of the Government Code nor the language of Rider 37 effects an appropriation of earned interest.

Appropriations by implication have been found under certain circumstances.  In Atkins v. State Hwy. Dep't, 201 S.W. 226 (Tex. Civ. App. 1917, no writ), the court held that the following language did effect an appropriation by implication:

> All funds coming into the hands of the Highway Commission, derived from the registration fees hereinbefore provided for, or from other sources, as collected, shall be deposited with the State Treasurer to the credit of a special fund designated as 'The State Highway Fund,' and shall be paid only on warrants issued by the State Comptroller upon vouchers drawn by the Chairman of the Commission, such vouchers to be accompanied by itemized sworn statements of the expendiures, except when such vouchers are for the regular salaries of the employees of the Commission.  The said State Highway Fund shall be expended by the State Highway

> Commission for the furtherance of public road construction and the establishment of a system of State highways, as contemplated and set forth in this Act. (Emphasis added.)

Acts 1917, 25th Leg., ch. 190, at 424. The court concluded that the language set forth above indicated the legislature's intent that the fees involved be appropriated. Because the general laws at issue contained language very similar to that underscored above, several attorney general opinions held that those statutes involved also effected appropriations. See also Attorney General Opinions C-297 (1964); V-923, V-895, V-887 (1949).

On the other hand, several attorney general opinions held that language contained in various general laws or appropriation act provisions did not effect any appropriation. For example, in Attorney General Opinion V-412 (1947), this office was asked, inter alia, whether an amendment passed in 1947 to then V.T.C.S. article 6053, which conferred broad regulatory authority on the Railroad Commission governing butane and liquified petroleum gases, effected an appropriation of license fees collected in connection with the act. The amendment provided:

> All fees received by the state from licenses issued under this Act shall be made available to the Railroad Commission for use in paying the legitimate expenses incurred in administering and enforcing the provisions of this Act, and for no other purpose; provided, however, that any excess funds remaining at the end of each two-year period shall go to the General Fund.

Acts 1945, 49th Leg., ch. 358, at 634. The appropriations act passed in 1947 contained a rider that provided that all fees received by the commission under article 6053 shall be paid into the General Revenue Fund. This office concluded that the language set forth above did not have the effect of appropriating the license fees collected.

In Attorney General Opinion V-923 (1949), this office was asked to construe the following two paragraphs:

> All such fees as are collected under this Act shall be deposited in the State Treasury in a special fund under the title of the

> Texas Vegetable Certification fund. The purpose of the fees being to pay for the enforcement of the law and to provide inspections called for; it further being the purpose to make the law self-supporting.

> Out of the fees collected under this Act, the Chief of the Markets and Wardhouse Division of the Department of Agriculture shall be paid in addition to the amount of his salary in the general appropriation bill in the sum of Four Hundred and Eighty Dollars ($480) per annum; which amount is hereby appropriated for said purpose.

Acts 1949, 51st Leg., ch. 581, at 1130. The opinion held that the second paragraph makes a definite and specific appropriation, but that the first paragraph, because it failed to contain the words "which amount is hereby appropriated for said purposes" that is set forth in the second paragraph, did not effect an appropriation. See also Attorney General Opinion V-1422 (1952).[7]

We think that the language set forth in section 481.059 of the Government Code and in Rider 37 is comparable to the language of the statutes discussed in Attorney General Opinions V-412 and V-923. Therefore, we conclude that no appropriation of earned interest is effected by either the general law or the rider. The bill merely authorizes the legislature to appropriate money from two sources; the rider

---

7. This office declared in Attorney General Opinion V-1422 (1952):

> The fact that an assessment is made and collected and the fund is earmarked by general statute for a certain use does not make it available unless it is also appropriated by the Legislature for that use. Furthermore, even though a general statute specifies payment of a certain amount, the amount actually paid is determined by the amount appropriated by the Legislature.

Id. at 3 (citations omitted).

merely limits the source to one and, in effect, carves out a subset from the bill for the duration of this biennium.

Riders to an appropriations act frequently serve this sort of function; a rider may prohibit a state agency from using appropriated money for activities that the agency is otherwise authorized to conduct. See, e.g., Attorney General Opinions JM-860 (1988); M-499 (1969). For example, state agencies have statutory authority to purchase insurance policies protecting against claims arising under the Tort Claims Act. Civ. Prac. & Rem. Code § 101.027. However, the general appropriations act for the current fiscal year prohibits any appropriated money from being expended for such purpose:

> None of the funds appropriated in this Act may be expended for the purpose of purchasing policies of insurance covering claims arising under the Texas Tort Claims Act.

Acts 1989, 71st Leg., ch. 1263, art. V, § 55, at 5797; see Attorney General Opinion JM-625 (1987). We conclude that section 481.059 does serve to limit the sources from which the administration of the loan program may be funded, but it does not effect an appropriation of those moneys.

### S U M M A R Y

The interest earned by the deposit of money in the Texas Exporters Loan Fund has not been appropriated during the current biennium to pay for the costs of administering the loan program.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jim Moellinger
Assistant Attorney General