CITY OF DALLAS, Appellant,

v.

Jim LOWENBERG et al, Appellees.

No. 11–03–00061–CV.

Court of Appeals of Texas,
Eastland.

March 1, 2006.

James Pinson, Asst. City Atty., Dallas, for appellant.

John T. Cox, III, Russell J. DePalma, Lynn Tillotson & Pinker, L.L.P., Robert M. Nicoud, Jr., Olson Nicoud & Glueck, L.L.P., Dallas, for appellees.

Panel consists of: WRIGHT, C.J., and McCALL, J., and STRANGE, J.

## OPINION ON REMAND

JIM R. WRIGHT, Chief Justice.

This appeal stems from a class action suit against the City of Dallas. Jim Lowenberg, on behalf of himself and a certified class of all others similarly situated, (the plaintiffs) sued the City seeking a declaration that a fire safety registration fee assessed against owners and operators of commercial buildings was unconstitutional. The plaintiffs also sought a refund of those fees plus additional attorney's fees. Both sides moved for summary judgment. The trial court denied the City's motions and granted the plaintiffs' motion in part. After a hearing regarding attorney's fees,

the trial court entered judgment in favor of the plaintiffs in the amount of $1,847,454.36. Both sides appealed. On original submission, we found that the plaintiffs' claims were barred by limitations.[1] The Texas Supreme Court reversed our judgment and remanded the cause to this court for consideration of the remaining issues on appeal. *Lowenberg v. City of Dallas,* 168 S.W.3d 800 (Tex.2005). We now reverse and render in part and remand in part.

### Remaining Issues

The City asserts five points of error with various subpoints, and the plaintiffs assert one cross-point involving prejudgment interest. In its first point of error, the City contends that the trial court erred in granting the plaintiffs' motion for summary judgment. In its second point, the City explains that the granting of summary judgment was erroneous because the plaintiffs failed to establish duress, because the plaintiffs failed to establish that the registration fee was actually a tax, because there is a genuine issue of fact regarding whether the registration fee was a tax, because the plaintiffs failed to establish that they were entitled to declaratory relief as a matter of law, and because the plaintiffs failed to establish that they were entitled to attorney's fees as a matter of law. In the third point, the City contends that the trial court erred in granting the plaintiffs' motion for summary judgment and denying as a matter of law the City's defense of voluntary payment. In its fourth point, the City argues that the trial court erred in denying the City's motions for summary judgment because there was either no evidence of duress or there was conclusive proof of the voluntariness of the payments and because the City established that there were no genuine issues of mate-

---

1. *City of Dallas v. Lowenberg,* 144 S.W.3d 46 (Tex.App.-Eastland 2004).

rial fact and that it was entitled to judgment as a matter of law on the plaintiffs' claims for declaratory relief and attorney's fees. In its final point of error, the City challenges the certification of the plaintiff class.[2]

### Class Certification

The City contends in its fifth point of error that the trial court abused its discretion in certifying the plaintiff class without demonstrating how common issues would predominate over individual issues. The issue of class certification has already been addressed at the appellate level. The City brought an interlocutory appeal to the Dallas Court of Appeals after the trial court certified the class. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(3) (Vernon Supp.2005). The Dallas Court of Appeals upheld the certification in *City of Dallas v. Brewster,* No. 05–00–00335–CV, 2000 WL 1716508 (Tex.App.-Dallas Nov. 17, 2000, no pet.)(not designated for publication). Because the Dallas Court of Appeals has already determined the propriety of the certification, we need not address that issue. The arguments made in this appeal either were made or should have been made in the interlocutory appeal. The fifth point of error is overruled.

### Summary Judgment Standard of Review

In order to address the City's first four points of error attacking the propriety of the summary judgment rulings, we will apply the well-recognized standard of review for summary judgment. A trial court must grant a traditional motion for summary judgment if the moving party establishes that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991). Once the movant establishes a right to a summary judgment, the nonmovant must come forward with evidence or law that precludes summary judgment. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678–79 (Tex.1979). When reviewing a summary judgment, the appellate court takes as true evidence favorable to the nonmovant. *Am. Tobacco Co., Inc. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

### Validity of Fire Safety Registration Fee

 The summary judgment evidence shows that the City adopted an ordinance amending the Dallas Fire Code effective January 1, 1995.[3] The ordinance, No. 22206, provided for the "Fire Safety Registration of Commercial Buildings." The ordinance required the owners or operators of commercial buildings within Dallas to obtain an annual certificate of registration. To obtain such a certificate, an applicant was required to submit a form containing the following information: the applicant's name, address, telephone number, and verified signature; the name, address, and main telephone number of the commercial building; the name, address, and telephone number of an emergency-contact person; the size of the building; the type of occupancy; a description of any hazardous operations in the building; and a description of the building's fire protection features and unique aspects. The ordi-

---

**2.** In setting forth the City's points of error, we have omitted the subpoints regarding limitations because the issue of limitations has already been decided by the supreme court.

**3.** We note that, after public outcry, the City subsequently repealed this ordinance insofar as it required applicants to pay a registration fee but that the City continued its collection efforts for the year that the ordinance had been in effect.

nance also required that applicants, in order to obtain a certificate of registration, must pay an annual registration fee ranging from $70 to $2,150 depending upon the area of the building. The ordinance provided further, "A person commits an offense if he owns, operates, or controls a commercial building in the city without a valid certificate of registration."

█ Whether the fire safety registration fee imposed by the City actually constituted an occupation tax or a license fee depends upon the primary purpose of the registration fee when considering the ordinance as a whole. *Hurt v. Cooper*, 130 Tex. 433, 110 S.W.2d 896, 899 (1937); *City of Houston v. Harris County Outdoor Adver. Ass'n*, 879 S.W.2d 322, 326 (Tex.App.-Houston [14th Dist.] 1994, writ denied). If the primary purpose of such an exaction is for regulation, then it is a license fee; if, however, the primary purpose is to raise revenue, then the exaction is an occupation tax regardless of the name by which it is designated. *Hurt*, 110 S.W.2d at 899; *Harris County Outdoor Adver. Ass'n*, 879 S.W.2d at 326.

Upon considering the ordinance as a whole and other summary judgment evidence, it is apparent that the primary purpose of the fire safety registration fee was to raise revenue. The record shows that the City commissioned a study by an outside consultant to review selected fees and charges to determine to what extent the full cost of associated services are recovered by revenues and to identify new fee sources or increases. The consulting firm initially recommended a fire inspection fee, but the City rejected that recommendation and instead adopted the fire safety registration program (FSRP). According to Karen Bass, Deputy Chief of the Dallas Fire Department, projected revenue from the FSRP, based upon a 70% collection rate, "was targeted to fully offset the cost of fire prevention services currently funded through the City's General Fund." Thus, the owners and operators of commercial buildings were essentially paying for all of the City's fire prevention services. No special benefits or regulations came from the ordinance.

Because the primary purpose of the registration fee was to raise revenue, it was an occupation tax. We can find no authority, and the City has cited us to none, authorizing such an occupation tax on the owners and operators of commercial buildings. *See* TEX. CONST. art. VIII, § 1(f); *Harris County Outdoor Adver. Ass'n*, 879 S.W.2d at 326 (municipality prohibited from levying occupation tax where no such tax has been previously levied by the State). We hold that the evidence does not raise a genuine issue of fact regarding the purpose of the statute and that the trial court did not err in determining that the plaintiffs showed as a matter of law that the registration fee was in actuality an illegal occupation tax.

### Voluntariness of Payment

█ Having determined that the trial court was correct in declaring the ordinance to be invalid, we must now determine whether the trial court was correct in its determination that the plaintiffs were entitled to repayment. The City asserted that, regardless of the propriety of the registration fee, reimbursement was impermissible because the plaintiffs voluntarily paid the fee. The City had the burden of conclusively establishing its defense of voluntary payment. *Dallas County Cmty. Coll. Dist. v. Bolton*, No. 02–1110, 185 S.W.3d 868, 871–72 (Tex. 2005). The plaintiffs responded that their payments were not voluntary but, instead, were paid under duress.

█ In paying taxes and government fees, courts have long recognized that du-

ress may play a pivotal role in the ability to recover those payments when the taxes and fees are later determined to be unlawful. *Id.* at 876–77. A person who pays a tax or fee voluntarily and without duress does not have a valid claim for its repayment even if the tax or fee is later held to be unlawful. *Id.; Nat'l Biscuit Co. v. State*, 134 Tex. 293, 135 S.W.2d 687, 692–93 (1940). The issue has been expressed as "whether plaintiffs paid the tax by reason of an Act which was so burdensome and onerous as to justify the trial court's belief that the plaintiffs paid the taxes under duress." *State v. Akin Prods. Co.*, 155 Tex. 348, 286 S.W.2d 110, 111 (1956). More recently, the supreme court stated: "A common element of duress in all its forms ... is improper or unlawful conduct or threat of improper or unlawful conduct that is intended to and does interfere with another person's exercise of free will and judgment." *Bolton*, at 878–79. Where the facts are undisputed, the determination of whether a payment is voluntary or involuntary is a question of law. *Id.* at 880.

Important public policy reasons favor the voluntary payment rule even though the rule "may seem counterintuitive." *Id.* at 876–77. Justice Wainwright recently expressed these reasons as follows:

> In the taxation context, the rule secures taxing authorities in the orderly conduct of their financial affairs. *Id.* [*City of Houston v. Feizer*, 76 Tex. 365, 13 S.W. 266 (1890)], 13 S.W. at 267 ("It is a rule of quiet as well as of good faith ...."); *see also Salvaggio v. Houston Indep. Sch. Dist.*, 752 S.W.2d 189, 193 (Tex. App.-Houston [14th Dist.] 1988, writ denied). The Supreme Court also has recognized the "government's exceedingly strong interest in financial stability in this context" and threats to a state's financial security that can arise from unpredictable revenue shortfalls. *McKesson Corp. v. Div. of Alcoholic Bevs. & Tobacco, Dep't of Bus. Regulation of Fla.*, 496 U.S. 18, 37, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990). The rule also supports the age-old policies of discouraging litigation with the government. *See Austin Nat'l Bank*[ *v. Sheppard*], 71 S.W.2d [242] at 246 [ (1934) ]; *see also Salvaggio*, 752 S.W.2d at 193.

*Bolton*, at 867–77.

The record in this case shows that little summary judgment evidence was presented regarding this issue of voluntariness but that the facts were not disputed. The terms of the ordinance were included in the record. The ordinance provided that a person who failed to pay the fee could be prosecuted in municipal court for an offense punishable by a fine not to exceed $2,000. A few of the plaintiffs presented summary judgment evidence regarding their payment of the registration fee. Lowenberg testified that he initially intended to challenge the fee in municipal court but that, "after speaking with some other people," he "decided" to pay the fee in exchange for the City's agreement to drop the fine. Likewise, plaintiff A.E. Brewster was cited to appear in municipal court, but he too paid the fee in exchange for a dismissal. Plaintiff Henry McAdams was not cited to appear in municipal court, but he stated that he had paid the fee "under protest." The ordinance did not provide for a protest procedure. Nothing in the record shows that any of the plaintiffs, prior to paying the fee, challenged the validity of the ordinance in any court proceeding. Furthermore, nothing in the record indicates that the plaintiffs were subjected to duress based on an economic or business compulsion theory. *See id.; Akin Prods. Co.*, 286 S.W.2d at 111; *see also City of Houston v. Feizer*, 76 Tex. 365, 13 S.W. 266 (1890). The possibility of an impending fine does not necessarily constitute duress. *See, e.g., Feizer*, 13

S.W. at 267–68 (where the possibility of a $100 fine in 1890 did not constitute duress). The ordinance in this case did not otherwise impact business operations, the right to do business, the building premises, or the title to the real property.

In light of the public policy considerations, the terms of the ordinance, and the options available to challenge the fee, we cannot hold that the possibility of being fined up to $2,000 constitutes the type of duress that would "interfere with another person's exercise of free will and judgment." *See Bolton,* at 878. We hold that the City established as a matter of law that the plaintiffs paid the fee voluntarily and that any coercion to pay the fee did not constitute duress. *See Bolton,* at 876–84; *Salvaggio v. Houston Indep. Sch. Dist.,* 752 S.W.2d 189, 193 (Tex.App.-Houston [14th Dist.] 1988, writ denied). Consequently, the trial court erred in granting summary judgment to the plaintiffs and in denying the City's request for summary judgment on this basis.

### *Attorney's Fees*

 Next, we must consider the trial court's award of attorney's fees to the plaintiffs. The plaintiffs brought this lawsuit in part pursuant to the Texas Uniform Declaratory Judgments Act. TEX. CIV. PRAC. & REM.CODE ANN. § 37.001–.011 (Vernon 1997 & Supp.2005).[4] This Act provides that a trial court "may award costs and reasonable and necessary attorney's fees as are equitable and just." Section 37.009. The award of attorney's fees in a declaratory judgment action is within the trial court's discretion and is not dependent on a finding that a party substantially prevailed. *Barshop v. Medina County Underground Water Conservation Dist.,* 925

S.W.2d 618, 637–38 (Tex.1996); *Oake v. Collin County,* 692 S.W.2d 454, 455 (Tex. 1985). Consequently, we must remand this cause to the district court for it to consider and exercise its discretion on the amount of attorney's fees, if any, which should be awarded to the parties in this case. *Barshop,* 925 S.W.2d at 638.

### *Prejudgment Interest*

 Finally, we must consider the plaintiffs' cross-point challenging the accrual date used by the trial court to calculate prejudgment interest. Because the plaintiffs paid the fees voluntarily, they were not entitled to repayment. Thus, the City was entitled to a take-nothing summary judgment on the claim for damages. The only issue remaining is the amount, if any, of attorney's fees. Prejudgment interest is not recoverable on an award of attorney's fees. *Cushman & Wakefield, Inc. v. Fletcher,* 915 S.W.2d 538, 547 (Tex. App.-Dallas 1995, writ denied). Consequently, we need not determine whether the trial court used the correct date of accrual. TEX.R.APP. P. 47.1. Moreover, we note that the plaintiffs provided the proposed judgment, which contained the interest that they now complain about on appeal, and that one of the plaintiffs' attorneys agreed to the accrual date, stating in open court: "[T]hat's what we agreed on was the correct way that the interest should be calculated." The plaintiffs, therefore, did not preserve the issue for review. The cross-point is overruled.

### *Conclusion*

The City's first, second, third, and fourth points of error are sustained insofar as they relate to the issues of duress and voluntariness of the plaintiffs' payments.

---

**4.** Declaratory relief is appropriate to determine the construction or validity of a municipal ordinance. Section 37.004.

Because, as a matter of law, the payments were made voluntarily, the trial court erred in granting the plaintiffs' motion for summary judgment and in denying the City's motion for summary judgment on these issues. Consequently, the judgment of the trial court is reversed, and we render judgment that the plaintiffs take nothing on their claims for repayment of the registration fees. The issue of attorney's fees is, however, remanded to the trial court for further consideration.

RICK STRANGE, Justice, dissenting.

I agree with the majority on all issues save their finding that plaintiffs voluntarily paid the fire safety registration fee. I would find that the fee was paid involuntarily and that plaintiffs are entitled to reimbursement. Accordingly, I respectfully dissent.

The supreme court's recent decision in *Dallas County Community College District v. Bolton*[1] supports reimbursement here because plaintiffs had to pay the fee to avoid financial penalties. Justice Wainwright, writing for a 6–3 majority in *Bolton,* found the Community College District had improperly charged two student fees but held that the students were barred from seeking reimbursement because the fees had been voluntarily paid. The three dissenters agreed the fees were improper but believed they had been involuntarily paid.

Justice Wainwright's analysis indicates that the differences between the student fees and the City's fire registration fee should lead to a different result in this case. First, the student fees were not mandatory. The City's fee was. A student could avoid the fees by going to a different school, restructuring their class load, or by applying for a waiver. Dallas businessmen had no such options. All owners and operators of commercial property were required to pay the fee.

Second, the ordinance included a potential $2,000 penalty if the fee was not timely paid. The *Bolton* majority acknowledged that a person is entitled to reimbursement when a public entity compels compliance with a void law and subjects them to punishment for noncompliance.[2] They recognized three instances where the supreme court had found "implied duress."[3] Of these, the most applicable is *Highland Church.*[4] There, a church disputed its liability for an ad valorem tax. A judgment was rendered against it, and it appealed. The church paid the tax during the appeal to avoid further penalties and interest. The supreme court held that the church's payment was not voluntary and, thus, that its appeal was not moot. The other two cases can be distinguished factually. *National Biscuit*[5] involved a much more severe penalty: forfeiture of the right to do business in the State. *Miga*[6] concerned the payment of a judgment during an appeal to avoid postjudgment interest. But in both instances, a party made a payment it did not believe it owed to avoid further financial consequence; and, in each case,

1. *Bolton,* No. 02–1110, 185 S.W.3d 868 (Tex. 2005).

2. *See In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 758 (Tex.2001), and *State v. Akin Prods. Co.,* 155 Tex. 348, 286 S.W.2d 110, 111–12 (1956).

3. *Miga v. Jensen,* 96 S.W.3d 207, 211, 224–25 (Tex.2002); *Highland Church of Christ v. Powell,* 640 S.W.2d 235, 237 (Tex.1982); and *Nat'l Biscuit Co. v. State,* 134 Tex. 293, 135 S.W.2d 687 (1940).

4. 640 S.W.2d at 235.

5. 135 S.W.2d at 687.

6. 96 S.W.3d at 207.

the Supreme Court held the payment was not voluntary.

The financial impact the void fee had on plaintiffs is a relevant inquiry. Draconian consequences support a finding of duress but are not required. The *Bolton* majority noted: "We have repeatedly held that duress is established where the unauthorized tax or fee is 'required,' 'necessary,' or 'shall' be paid *to avoid the government's ability to charge penalties or halt a person from earning a livelihood or operating a business.*"[7] (emphasis added) Thus, being forced out of business would support a finding of duress but so too would a mandatory payment made to avoid financial penalties. Plaintiffs had the option of contesting the ordinance in municipal court or filing a pre-emptive lawsuit in district court. Due process, therefore, was satisfied. But paying the fire registration fee was not only mandatory, it was the only way to avoid the potential $2,000 penalty. Some plaintiffs received citations to appear in municipal court. If they had challenged the ordinance in municipal court and lost, they owed the fee and any assessed penalty. If they had challenged the ordinance in district court, a judge might or might not have enjoined collection of the fee or penalty. Consequently, a plaintiff wishing to avoid a potential $2,000 fine had one choice free from uncertainty: pay the fee.

The financial impact reimbursement of the invalid fee would have on the City is also a relevant inquiry. The *Bolton* majority recognized the necessity for a governmental authority to be able to rely on a predictable income stream.[8] Forcing the City to reimburse fees we find it should never have collected thrusts financial unpredictability and unexpected expenditure upon the City. While relevant, the supreme court has never characterized this as de-

terminative. To hold otherwise would have the perverse effect of encouraging public entities to provide lesser rather than greater protection to their citizens.

The City provided no mechanism for contesting the fee or paying it under protest. Instead, it adopted a penalty that was sufficiently high to encourage compliance but at the same time was less than one would incur in litigation contesting the ordinance. Plaintiff Lowenberg, for example, was assessed an $80 fee. The City cited him for failing to pay it. If he had contested his liability in municipal court and lost, he could have been required to pay $2,080. He understandably paid the $80 fee to avoid a fine.

Because the ordinance operated exactly as intended, money which should never have been collected was. That money was presumably placed immediately in the City's coffers. Requiring the City to reimburse plaintiffs will impose a hardship on the City, but the City should not be in a better legal position today because it immediately spent the void fee than it would be had the ordinance provided citizens with a mechanism to pay under protest, or otherwise challenge the fee without incurring a financial penalty.

For these reasons, I would find the plaintiffs' payments were involuntary and I, therefore, respectfully dissent.

7. *Bolton,* at 879–80.

8. *Bolton,* at 881–82.