COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-277-CV

 

 

DENNIS L. MIGA                                                                 APPELLANT

 

                                                   V.

 

RONALD L. JENSEN                                                                APPELLEE

 

                                              ------------

 

           FROM
THE 352ND DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

Appellant Dennis L. Miga
appeals the trial court=s granting
of summary judgment in favor of Appellee Ronald L. Jensen.  Jensen filed this lawsuit against Miga,
seeking the recovery of an approximately $23,400,000 payment that he tendered
to Miga toward the satisfaction of a judgment in order to stop the running of
postjudgment interest on the judgment pending cross-appeals. 

 








Following the initial
lawsuit, the Texas Supreme Court reversed the trial court=s judgment, directed the entry of a judgment for $1,034,400, and
directed that Miga receive ten percent postjudgment interest, compounded
annually.  See Miga v. Jensen,
96 S.W.3d 207, 217-18 (Tex. 2002) (Miga I).  Jensen then brought this lawsuit to recover
the overpayment, and both parties moved for summary judgment.  The trial court granted Jensen=s motion for summary judgment and denied Miga=s motion for summary judgment. 
In five issues, Miga asserts that the trial court erred by granting
Jensen=s motion for summary judgment because he is not required to repay the
money that Jensen voluntarily agreed to unconditionally tender and because
there are genuine issues of material fact. 
We affirm. 

PROCEDURAL BACKGROUND








This case has its origins in
a prior lawsuit filed by Miga against Jensen. 
In that case, the jury found for Miga on his theories of breach of
contract, common law fraud, and fraud in a stock transaction.  Miga filed a motion for judgment on the
verdict, and Jensen filed a motion for judgment notwithstanding the
verdict.  The trial court disregarded the
jury=s findings of common law and statutory fraud and the jury=s award of punitive damages and entered judgment for Miga for
$18,810,086 on his claim for breach of contract. The trial court also awarded
Miga prejudgment interest on the amount of actual damages awarded amounting to
$4,486,385.86.

Both parties appealed to this
court, and we affirmed the trial court=s judgment notwithstanding the verdict, which disregarded the jury=s fraud and punitive damages claim. 
Miga v. Jensen, 25 S.W.3d 370, 381 (Tex. App.CFort Worth 2000), aff=d in part, rev=d in part, 96 S.W.3d 207 (Tex. 2002) (Miga
I).  After holding that the trial
court=s judgment on Miga=s contract claim provided for a double recovery, we rendered judgment
awarding Miga damages for $17,775,686.  Id.
at 381.

To suspend execution of the
judgment pending appeal to the Texas Supreme Court, Jensen filed a supersedeas
bond in the amount of $25,496,623.39, which subsequent riders increased to
$29,500,000.  Shortly after this court=s decision in Miga I, the parties entered into an Agreed Order,
which the trial court signed, under which Jensen made Aan unconditional tender [to Miga]. . . of the sum of $23,439,532.78. .
. toward satisfaction of the Judgment in order to terminate the accrual of post‑judgment
interest on that sum.@








After this court=s opinion in Miga I, both parties filed petitions for review in
the Texas Supreme Court, which were granted. 
The supreme court held that the proper measure of damages for the breach
of a stock option contract was the amount the jury had awarded for the value of
the stock at the time of the breach, which amounted to $1,034,400, and directed
that the case be remanded to the trial court for rendition of a judgment for
Miga in that amount, along with prejudgment and postjudgment interest.  Id. at 215-17.  In that opinion, the supreme court considered
and rejected Miga=s assertion
that Jensen=s
$23,439,532.78 payment to Miga mooted his right to appeal.  See id. at 211-12.  Miga filed a motion for rehearing, seeking
clarification regarding whether he was entitled to keep the payment, but the
supreme court denied the motion for rehearing without opinion.

On remand, Miga moved for
entry of a modified judgment in accordance with the supreme court=s opinion, judgment, and mandate. 
Jensen filed a cross-motion for restitution, requesting that the trial
court render judgment against Miga for over $27 million, representing the
approximately $23,400,000 unconditional payment, less the approximately $1.8
million awarded to Miga under the supreme court=s ruling, plus interest.  The
trial court rendered judgment for Miga for $1,879,382.11, including contract
damages, attorney=s fees,
court costs, principal, and interest. 
The trial court addressed only the issues specifically directed by the
supreme court=s mandate
and expressly declined to address Jensen=s cross-motion for restitution.








Jensen subsequently filed this
lawsuit, seeking recovery of $21,560,150.67, plus interest, under theories of
restitution, money had and received, and unjust enrichment.  Miga filed a combined no-evidence and
traditional motion for summary judgment, and Jensen filed a response and cross-motion
for traditional summary judgment.  The
parties continued to file supplemental and renewed motions for summary
judgment.  The trial court signed an
order granting Jensen=s renewed
motion for summary judgment[1]
and denying Miga=s renewed
motion for summary judgment.  The trial
court also signed a judgment awarding Jensen $21,560,150.67, together with
prejudgment and postjudgment interest against Miga and his wife.  Following the parties= stipulation dismissing Miga=s wife, the trial court signed a modified judgment assessing the
judgment against Miga alone.  This appeal
followed.

STANDARD OF REVIEW








In a summary judgment case,
the issue on appeal is whether the movant met the summary judgment burden by
establishing that no genuine issue of material fact exists and that the movant
is entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c); Sw.
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of
Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all
doubts about the existence of a genuine issue of material fact are resolved against
the movant.  Sw. Elec. Power Co., 73
S.W.3d at 215.

When reviewing a summary
judgment, we take as true all evidence favorable to the nonmovant, and we
indulge every reasonable inference and resolve any doubts in the nonmovant=s favor.  Valence Operating
Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  Evidence that favors the movant=s position will not be considered unless it is uncontroverted.  Great Am. Reserve Ins. Co. v. San Antonio
Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).

The summary judgment will be
affirmed only if the record establishes that the movant has conclusively proved
all essential elements of the movant=s cause of action or defense as a matter of law.  Clear Creek Basin, 589 S.W.2d at 678.








After an adequate time for
discovery, the party without the burden of proof may, without presenting
evidence, move for summary judgment on the ground that there is no evidence to
support an essential element of the nonmovant=s claim or defense.  Tex. R. Civ. P. 166a(I).  The motion must specifically state the
elements for which there is no evidence. 
Id.; Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 207
(Tex. 2002).  The trial court must grant
the motion unless the nonmovant produces summary judgment evidence that raises
a genuine issue of material fact.  See
Tex. R. Civ. P. 166a(I) &
cmt.; Sw. Elec. Power Co., 73 S.W.3d at 215.

We review the evidence in the
light most favorable to the party against whom the no evidence summary judgment
was rendered.  King Ranch, Inc. v.
Chapman, 118 S.W.3d 742, 751 (Tex. 2003), cert. denied, 541 U.S.
1030 (2004); Johnson, 73 S.W.3d at 197; Morgan v. Anthony, 27
S.W.3d 928, 929 (Tex. 2000).  If the
nonmovant brings forward more than a scintilla of probative evidence that
raises a genuine issue of material fact, then a no evidence summary judgment is
not proper.  Moore v. K Mart Corp.,
981 S.W.2d 266, 269 (Tex. App.CSan Antonio 1998, pet. denied). 

When both parties move for
summary judgment and the trial court grants one motion and denies the other,
the reviewing court should review both parties= summary judgment evidence and determine all questions presented.  FM Props. Operating Co. v. City of Austin,
22 S.W.3d 868, 872 (Tex. 2000).  The
reviewing court should render the judgment that the trial court should have
rendered.  Id.

 

 








                   THE PARTIES= SUMMARY JUDGMENT GROUNDS

In his motion for summary
judgment, Jensen alleged three grounds why he was entitled to summary judgment
as a matter of law.  He claimed he
conclusively proved his entitlement to a refund of the amount tendered pursuant
to the Agreed Order under the theories of restitution, money had and received,
and unjust enrichment.  The trial court=s order granting summary judgment in his favor was a general order
that did not specify which of the three grounds the court granted summary
judgment on.

In his motion for summary
judgment and responses to Jensen=s motion for summary judgment, Miga asserted that each of Jensen=s pleaded theories fail as a matter of law because the existence of
the parties= express
contract bars Jensen=s
quasi-contractual theories of recovery. 
Miga also contended that the Agreed Order constituted a voluntary
payment to Miga that was nonrefundable.

Jensen replied that Miga is
collaterally estopped from asserting that Jensen cannot recover payment under
the Agreed Order because the Texas Supreme Court in Miga I already
considered and rejected Miga=s argument. 

 

 

 








THE AGREED ORDER

The trial court=s Agreed Order provides:

WHEREAS Defendant Ronald L. Jensen (AJensen@)
desires to make an unconditional tender to Plaintiff Dennis L. Miga (AMiga@) of
the sum of $23,439,532.78 (the ATender Amount@)
toward satisfaction of the Judgment in order to terminate the accrual of
postjudgment interest on that sum; and

 

WHEREAS Miga is willing to accept the tender
under the terms of this Agreed order and the termination of the accrual of
postjudgment interest on the amount paid; and

 

WHEREAS Capitol Indemnity Corporation (ACapitol@) has
previously posted a supersedeas Bond, which was filed with and approved by the
Tarrant County District Clerk on April 13, 1998, in the amount of
$25,496,623.39, together with Increase Riders filed June 1, 1999 and April 7,
2000 in the total face amount of $29,500,000 (the original supersedeas bond together
with both AIncrease
Riders@ are
hereafter collectively referred to as AThe Supersedeas Bond@);
and

 

WHEREAS The Supersedeas Bond is secured by funds
held in a collateral account by Merryll Lynch, Pierce, Fenner & Smith, Inc.
(the ACollateral
Account@);
and

 

WHEREAS to secure the release of the funds from
the Collateral Account to make the proposed tender it is necessary to reduce
the obligation of the surety on the supersedeas bonds; and

 

WHEREAS the parties have agreed to the terms of
this Agreed Order to achieve the objectives described above; it is therefore

 








ORDERED that the obligation of Capitol Indemnity
Corporation on The Supersedeas Bond, is reduced to the total of $6,060,467.22,
effective immediately, and shall otherwise remain in effect unless and until
modified by further order of this Court. 
It is further 

 

ORDERED that Jensen cause a cashier=s
check in the amount of $23,439,532.78 payable to Dennis L. Miga and Thompson
& Knight, L.L.P. to be delivered to counsel for Miga by the close of
business on August 29, 2000.  It is
further

 

ORDERED that the payment of the Tender Amount in
accordance with the foregoing shall terminate the accrual of postjudgment
interest on the amount so paid.

 

Dated:  August 29, 2000.

The
parties agreed to the form and substance of the Agreed Order.

 

                       THE PARTIES= CONTENTIONS ON APPEAL








Miga raises five issues on
appeal.  In his first issue, Miga claims
that because Jensen made an Aunconditional tender@ under the Agreed Order, Jensen=s payment is nonrefundable and forecloses completely Jensen=s recovery under the theories of restitution, money had and received,
and unjust enrichment.  Miga=s second issue asserts that the voluntary-payment rule bars Jensen=s recovery under any of these three theories.  In his third issue, Miga contends that even
if Jensen=s three
theories could survive the unconditional tender and the voluntary-payment rule,
Jensen failed to conclusively establish all the elements of any of the three
theories he alleged.  Miga=s fourth issue asserts that Jensen failed to establish his theory that
the supreme court=s opinion in
Miga I determined that Jensen is entitled to recover Jensen=s approximately $23,400,000 payment (i.e., that Miga is collaterally
estopped from relitigating an issue that the supreme court held in Jensen=s favor).  Miga=s fifth issue claims that there are genuine issues of material fact as
to Jensen=s claims and
Miga=s claims.

                                   COLLATERAL ESTOPPEL

Jensen argued in the trial
court and in this court that Miga is collaterally estopped from asserting the
Agreed Order as a defense to Jensen=s claim for reimbursement because the supreme court rejected an
identical argument on the identical facts in Miga I.  See 96 S.W.3d at 211-12.  Jensen also argues that Miga is collaterally
estopped from asserting the voluntary-payment rule as a defense.  








Collateral estoppel, or issue
preclusion, prevents a party from relitigating a particular fact issue that the
party already litigated and lost in an earlier suit.  Quinney Elec. v. Kondos Entm=t, 988 S.W.2d 212, 213 (Tex. 1999).  The doctrine of collateral estoppel generally
applies when the issue was fully and fairly litigated in the previous action
and was essential to the judgment in the previous action.  Id. 
To invoke collateral estoppel, a party must establish that (1) the same
facts sought to be litigated in the second suit were fully litigated in the
first suit, (2) those facts were essential to the judgment in the first suit,
and (3) the parties were cast as adversaries in the first suit.  Sysco Food Servs. v. Trapnell, 890
S.W.2d 796, 801 (Tex. 1994).  The issue
decided in the first suit must be identical to the issue in the pending
suit.  State and County Mut. Fire Ins.
Co. v. Miller, 52 S.W.3d 693, 696 (Tex. 2001).  Collateral estoppel may preclude relitigation
of issues even though the later suit is based on a different cause of
action.  Johnson & Higgins of
Tex., Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 521 (Tex. 1998).








Jensen asserts collateral
estoppel based on the issue litigated in the first lawsuit regarding Awhether Jensen=s $23.4
million payment to Miga mooted his appeal of the judgment against him.@  See Miga I, 96 S.W.3d
at 211.  Jensen claims that Miga=s motion to dismiss Jensen=s appeal in the initial lawsuit involved the same argument based on
the same factsCthat the
Agreed Order constituted an agreement that Jensen=s payment was final and nonrefundableCand consequently, Miga=s attempt to resurrect this argument in opposition to Jensen=s right to restitution was barred by collateral estoppel. Jensen
contends that had the supreme court found that the payment was final and
nonrefundable, as asserted by Miga, it would have been required to dismiss the
appeal as moot.  Jensen also argues that
Miga is estopped from asserting the voluntary-payment rule as a defense by the
supreme court=s denial of
Miga=s motion to dismiss as moot Jensen=s appeal in Miga I because the decision was based in part on
the fact that the voluntary-payment rule barred Jensen from proceeding.

In Miga I, the supreme
court stated that A[t]he Texas
rule is not, and never has been, simply that any payment toward satisfying a
judgment, including a voluntary one, moots the controversy and waives the right
to appeal that judgment,@ explaining
that a party must be able to halt the accrual of postjudgment interest, yet
still preserve appellate rights.  Id.  The supreme court interpreted the language of
the Agreed Order, which stated that the purpose of Jensen=s payment was to Aterminate the accrual of postjudgment interest,@ and held that Jensen had preserved his right to appeal.  Id.  Thus, the focus of the supreme court=s determination was whether the right to appeal had been preserved,
rather than whether Jensen reserved or relinquished a right to a refund of the
money in the event of a reversal or whether the voluntary-payment rule
precluded Jensen=s
recovery.  See id.  Accordingly, we agree with Miga that the
issues decided in Miga I were separate and distinct issues from the
issue to be decided in this lawsuit, and collateral estoppel does not bar
litigation of the present issue here.  We
sustain Miga=s fourth
issue.

                                   CLAIM FOR RESTITUTION

We now consider Miga=s third issue, in which he contends that Jensen failed to conclusively
establish his claim for restitution.








Did Jensen Prove The
Elements Of His Cause Of Action For Restitution?

The Restatement of
Restitution section 74 provides that

[a] person who has conferred
a benefit upon another in compliance with a judgment, or whose property has
been taken thereunder, is entitled to restitution if the judgment is reversed
or set aside, unless restitution would be inequitable or the parties contract
that payment is to be final; if the judgment is modified, there is a right to
restitution of the excess.








Restatement (First) OF
Restitution ' 74 (1937).  The Restatement=s rule on restitution following reversal is supported by long-standing
United States Supreme Court precedent.  See
County of Dakota v. Glidden, 113 U.S. 222, 224, 5 S. Ct. 428, 429 (1885) (stating
that a judgment debtor can recover money paid under a judgment that has
subsequently been reversed); Bank of the U.S. v. Bank of Wash., 31 U.S.
8, 17 (1832) (noting that, on the reversal of a judgment, the law raises an
obligation on the party who has received the benefit of an erroneous judgment
to make restitution to the other party for what he has lost).  Texas precedent is also in accord with the
Restatement.  See Drake v. Trinity
Universal Ins. Co., 600 S.W.2d 768, 770-71 (Tex. 1980) (requiring that an
attorney who was paid for legal services to an estate under a court order was
liable to reimburse the estate when the order was reversed on appeal); Cleveland
v. Tufts, 69 Tex. 580, 7 S.W. 72, 74 (1888) (noting that money paid upon a
judgment that is later reversed may be recovered by the party making the
payment).  Thus, to be entitled to
restitution following a reversal, Jensen must prove that he conferred a benefit
to Miga in compliance with the judgment and that the judgment was subsequently
reversed or modified on appeal.  See
Restatement (First) of Restitution
' 74.

Miga asserts that Jensen is
not entitled to restitution because he has not proven that he suffered an
unconscionable loss and that Miga obtained an unjust enrichment by receiving
the funds, as required by an action for common law fraud.  The cases Miga cites are inapplicable to the
case at bar because they are not cases requiring restitution following a reversal;
rather, the cases apply to restitution of payments made under mistake of
fact.  See Bryan v. Citizens Nat=l Bank in Abilene, 628 S.W.2d 761, 763
(Tex. 1982) (stating that a party who pays funds under a mistake of fact may
recover restitution of those funds if the party to whom payment was made has
not materially changed his position in reliance thereon in order to prevent an
unconscionable loss); Cmty. Mut. Ins. Co. v. Owen, 804 S.W.2d 602, 605
(Tex. App.CHouston [1st
Dist.] 1991, writ denied) (stating that a party who has paid funds due to a
mistake of fact is entitled to restitution, if the receiving party has not
materially changed its position in reliance on the payment).








Miga also asserts that Jensen=s restitution-after-reversal cases are not applicable to the case at
bar because the cases have a common element requiring the payment to be made
under some form of judicial compulsion. Restitution after reversal is available
in cases Awhere a
judgment has been entered upon which money has been paid by the defeated party or
property has been sold on execution.@  See Restatement (First) of Restitution ' 74 cmt. a (emphasis added). 
Therefore, as long as a judgment that is subsequently reversed is paid
by the defeated party, the judgment does not have to be paid under some form of
judicial compulsion for the party to be entitled to repayment.  See id.

Miga asserts that Jensen is
not entitled to recover because he made the payment in compliance with the Afreely negotiated@ Agreed Order.  Miga  further contends that one of the exceptions
to Restatement of Restitution section 74 denies restitution when Athe parties contract that payment is to be final,@ and that this rule precludes Jensen=s right to recover the payment. However, in Miga I, the supreme
court determined that a party may make a payment toward satisfying a judgment,
including a voluntary one, without mooting the right of appeal if the judgment
debtor clearly expresses an intent that he intends to exercise his right of
appeal and appellate relief is not futile. 
See 96 S.W.3d at 211-12. 
We believe that implicit in reserving a right to appeal is the right to
a refund of the money in the event that the judgment is later modified or
reversed.








Miga asserts that Restatement
of Restitution section 74 contemplates that a judgment can be reversed or set
aside even though the parties have contracted that the payment would be final,
with the only consequence being that restitution is disallowed.  See Restatement
(First) of Restitution ' 74.  Here, however, the parties
did not clearly contract that the payment would be final.  Only when the parties clearly agree that the
payment shall be final should one party be held to such a result.  We do not agree with Miga=s assertion that the parties had contracted that the payment was to be
final; Jensen reserved his right to appeal in this case and the parties did not
clearly express an intention that the payment would be final.








Miga contends that
restitution in this instance would be inequitable[2]  because he detrimentally changed his position
in reliance on existing law by accepting payment from Jensen without
anticipating that Jensen=s payment
would moot the appeal. However, as the supreme court noted in Miga I, AThe Texas rule is not, and never has been, simply that any payment
toward satisfying a judgment, including a voluntary one, moots the controversy
and waives the right to appeal that judgment.@  96 S.W.3d at 211.

We hold that Jensen has
proven as a matter of law that he is entitled to restitution.  Accordingly, we overrule Miga=s third issue.  We next address
whether Miga has proven his defenses as a matter of law, thereby precluding
Jensen=s recovery.

Did Jensen Make An
Unconditional Tender?

In his first issue, Miga
claims that because Jensen made an Aunconditional tender@ under the Agreed Order, Jensen=s payment is nonrefundable and forecloses completely Jensen=s recovery under the theory of restitution.  Miga asserts that he is not required to repay
the money that Jensen voluntarily agreed to unconditionally tender.  Miga contends that applying the rules
regarding the interpretation of contracts demonstrates that Jensen=s payment of approximately $23,400,000 to Miga was intended to be
unconditional, unrestricted, and nonrefundable.








Jensen responds that the
Agreed Order does not bar his right to recovery because the term Aunconditional@ as used in
the Agreed Order did not mean that Jensen=s payment was nonrefundable, and the document contains no language of
settlement, finality, discharge, release, or dismissal.  Jensen states that his tender was Aunconditional@ to avoid
the flaw in Baucum v. Great Am. Ins. Co., 370 S.W.2d 863, 866 (Tex.
1963), in which the appellant=s delivery

of the tendered funds was conditioned on the
appellee=s execution of a release, and therefore, failed to terminate the
accrual of interest.[3]

The Agreed Order states that
Jensen is making an Aunconditional
tender@ to Miga Ain order to terminate
the accrual of postjudgment interest@ on the approximately $23,400,000 judgment.  According to the Agreed Order, Miga is Awilling to accept the tender under the terms of this Agreed Order and
the termination of the accrual of postjudgment interest on the amount paid.@ Finally, the Agreed Order explicitly states that the parties have
agreed to its terms in order to Aachieve the objectives described above.@

When a judgment debtor makes
a timely, unconditional tender of payment of the judgment, no postjudgment
interest will be allowed.  Trevino v.
City of Houston, 695 S.W.2d 289, 291 (Tex. App.CHouston [1st Dist.] 1985, writ ref=d n.r.e.).  A tender is defined
as Aan unconditional offer by a debtor or obligor.@  Baucum, 370 S.W.2d at
866.








The supreme court explained
in Miga I that A[w]hen a
judgment creditor has received an unconditional tender of the money awarded,
and may invest it as he chooses, there is no need for the continuing accrual of
post‑judgment interest.@  Miga I, 96 S.W.3d at
212.  Postjudgment interest is simply
compensation for a judgment creditor=s lost opportunity to invest the money awarded as damages at
trial.  See, e.g., Johnson &
Higgins of Tex., Inc., 962 S.W.2d at 528. 
Accordingly, the language in the Agreed Order clearly manifests the parties= intent that the payment was Aunconditional@ in the
sense that Miga had an unconditional right to use the money because, had the
tender been conditional, postjudgment interest would have continued to
accrue.  See C.F. Bean Corp. v.
Rodriguez, 583 S.W.2d 900, 900-02 (Tex. Civ. App.CCorpus Christi 1979, no writ).








A finding that the word Aunconditional@ in the
Agreed Order indicated that the tender was Aunconditional, unrestricted, and nonrefundable@ as proposed by Miga would not make sense.  Here, Jensen=s continued pursuit of appellate review would be fruitless if he had
relinquished the approximately $23,400,000 tender without anticipating a refund
in the event that he prevailed on appeal. 
Furthermore, as noted by the supreme court, Jensen had informed Miga
that he believed the Agreed Order would not moot his complaint and that he
would continue to pursue appellate review. 
See Miga I, 96 S.W.3d at 212. 
Additionally, implicit in reserving a right to appeal is the
understanding that the party would be entitled a refund upon prevailing on
appeal.  Thus, we disagree with Miga=s contention that Jensen=s argument would require this court to add an unstated condition to
the parties=
agreement.  We overrule Miga=s first issue. 

Does The
Voluntary-Payment Rule Bar Jensen=s Recovery?

In his second issue, Miga
asserts that the voluntary-payment rule bars Jensen=s quasi-contractual theories of recovery.

The common law
voluntary-payment rule requires that money voluntarily paid on a claim of
right, with full knowledge of all the facts, in the absence of fraud,
deception, duress, or compulsion, cannot be recovered merely because the party
at the time of payment was ignorant of or mistook the law as to his
liability.  BMG Direct Mktg., Inc. v.
Peake, 178 S.W.3d 763, 768 (Tex. 2005). 
The rule is a defense to claims asserting unjust enrichment; that is,
when a plaintiff sues for restitution claiming a payment constitutes unjust
enrichment, a defendant may respond with the voluntary‑payment rule as a
defense.  Id.  Absent fraud, coercion, or duress, public
policy favors protecting the finality of payments when a person is aware of all
the facts upon which the liability to make payment depends.  Id. at 769. 








Many courts have recognized a
Amodern@ type of
duress often referred to as Abusiness compulsion@ or Aeconomic
duress.@  Dallas County Cmty. Coll.
Dist. v. Bolton, 185 S.W.3d 868, 877 (Tex. 2005); State v. Akin Prods.
Co., 155 Tex. 348, 286 S.W.2d 110, 111 (Tex. 1956); Crow v. City of
Corpus Christi, 146 Tex. 558, 562-63, 209 S.W.2d 922, 924-25 (1948).  Business compulsion and economic duress have
been referred to as Aimplied
duress,@ because the pressure to pay these government exactions is indirect
and flows from statutes or ordinances.  See
Bolton, 185 S.W.3d at 877 (interpreting Miga I, 96 S.W.3d at 211,
224‑25, by stating Acompulsion >implied by the threat of statutory penalties and accruing interest= constitutes economic duress@); see also Highland Church of Christ, 640 S.W.2d at 237
(holding that duress may be implied from a statute which imposes a penalty and
interest for failure to timely pay a tax); Nat=l Biscuit Co. (Nabisco) v. State, 134
Tex. 293, 303-04, 135 S.W.2d 687, 692‑93 (1940) (noting that where a
statute imposed the penalties at issue, the taxes were paid under duress, and
the taxpayer need not take the risk of incurring the statutory punishments
while the case was being litigated); Austin Nat=l Bank v. Sheppard, 71 S.W.2d 242, 245‑46
(Tex. 1934). 








The Agreed Order states that
Jensen committed to make Aan
unconditional tender to [Miga] of the sum of $23,439,532.78 . . . toward satisfaction
of the Judgment in order to terminate the accrual of postjudgment interest on
that sum.@  Interest was accruing at a rate of ten
percent, compounded annually. 
Accordingly, Jensen signed the Agreed Order under economic duress, and
the voluntary-payment rule does not bar his right to recovery.  We overrule Miga=s second issue.

Having determined that Jensen
established as a matter of law that he was entitled to restitution and that
Miga failed to conclusively establish his defenses, we need not address the
remaining grounds in Jensen=s motion for summary judgment. 
Because we have concluded that Jensen proved his entitlement to summary
judgment under the theory of restitution, we overrule Miga=s fifth issue which asserts that there is a genuine issue of material
fact regarding Jensen=s
entitlement to summary judgment.

                                           CONCLUSION                                           

Having overruled Miga=s issues one, two, three, and five,[4]
we affirm the judgment of the trial court.

 

DIXON W. HOLMAN

JUSTICE

 

PANEL
B:  CAYCE, C.J.; LIVINGSTON and HOLMAN,
JJ.

 

CAYCE,
C.J. dissents with opinion

 

DELIVERED:  November 30, 2006











 
 
 
 
 
 
 




 

 

 

 

 

 

                                      COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-277-CV

 

 

DENNIS L. MIGA                                                                 APPELLANT

 

                                                   V.

 

RONALD L. JENSEN                                                                APPELLEE

 

                                              ------------

 

           FROM
THE 352ND DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                   DISSENTING
OPINION

 

                                              ------------

I respectfully dissent.  There are three irrefutable facts in this
case that compel us to reverse the trial court=s summary judgment and render judgment in favor of Miga:

$                  
Jensen made an Aunconditional
tender@ of
$23.4 million to Miga pursuant to the clear and unambiguous terms of their Rule
11 agreement for the express purpose of terminating the accrual of postjudgment
interest on that sum.

 

$                  
Jensen reserved the right to appeal the judgment,
but he did not  reserve the right
to a refund of the payment in the event his appeal was successful.








 

$                  
Jensen paid the money to Miga voluntarilyChe
had no obligation to pay any amount of money to Miga to satisfy the judgment
because he had posted a supersedeas bond that fully secured the judgment.

 

These facts preclude Jensen from recovering the
money from Miga under the theory of restitution as a matter of law.[1]  













To avoid this result,
however, the majority makes three novel and facially erroneous pronouncements,
none of which have any basis in the law or the facts of this case.  First, the majority holds that Jensen=s Aunconditional
tenderA is, indeed, conditional, and that, contrary to the plain and
ordinary meaning of this term, when used in an agreement such as the one here,
it means that the party who accepts the tender only has the Aunconditional right to use the money@ pending the outcome of the appeal. 
Wholly ignoring the substantial benefits Jensen gained from the
agreement,[2] and relying entirely on hindsight, the
majority reasons that it Awould not
make sense@ to
interpret the word  Aunconditional@ in
accordance with its commonly understood meaning because to do so would make his
appeal of the judgment Afruitless@Cnotwithstanding the fact that Jensen would remain liable to Miga under
the judgment for over $6 million if he did not appeal.[3]

        Second, the majority holds that when a
judgment debtor expresses an intent to exercise his right to appeal in connection
with an unconditional tender of money paid to the judgment creditor pursuant to
the terms and conditions of a Rule 11 agreement, the judgment debtor has an Aimplicit@ right to a
refund if the appeal is successful.[4]  According to the majority opinion, this
implicit reservation of refund rights trumps the express terms of the written
agreement foreclosing such rightsCeven when the refund would be detrimental to the judgment creditor.[5]








Third, after noting two
decisions of the Supreme Court of Texas supporting Miga=s argument that Jensen=s payment was made voluntarily and without duress,[6] the majority departs from the controlling
principles of those cases and holds that, when Jensen made his unconditional
tender of $23.4 million toward the satisfaction of the judgment to terminate
the accrual of postjudgment interest, he was not acting voluntarily.  Rather, the majority concludes Jensen was
acting under Aeconomic
duress,@ even though he had the demonstrated ability to avoid paying Miga the
$23.4 million by obtaining a supersedeas bond that fully secured the judgment.








When interpreting contracts,
the role of courts is to Aascertain
the true intentions of the parties as expressed in the instrument.@  Coker v. Coker, 650
S.W.2d 391, 393 (Tex. 1983).  We are to
determine what the parties= expressed intent is, not what we believe it should beCupholding only those parts of their agreement that Amake sense@ to us and
rejecting those that do not.  We are also
Aprohibited from supplying terms, provisions, or conditions not
previously agreed upon by the parties.@  Donzis v. McLaughlin,
981 S.W.2d 58, 65 (Tex. App.CSan Antonio 1998, no pet.).  The
parties to a contract are considered Amasters of their own choices@ and Aeach is
entitled to rely upon the words selected to demarcate their respective
obligations and rights.@  ASI Tech., Inc. v. Johnson Equip. Co.,
75 S.W.3d 545, 549 (Tex. App.CSan Antonio 2002, pet. denied) (quoting Cross Timbers Oil Co. v.
Exxon Corp., 22 S.W.3d 24, 26 (Tex. App.CAmarillo 2000, no pet.)).  

Because I believe the majority
has violated these well-established principles of contract interpretation,[7] and misapplied the principles of duress and
the voluntary payment rule, I must respectfully dissent.  I would reverse the judgment of the trial
court and render judgment that Jensen take nothing on all of his quasi-contract
claims against Miga.

 

 

JOHN CAYCE

CHIEF JUSTICE 

 

DELIVERED:  November 30, 2006

 











[1]In
the final judgment, the trial court recited that before the court was Jensen=s
renewed motion for summary judgment or, in the alternative, motion for entry of
order under rule of civil procedure 166a(e). 
Tex. R. Civ. P. 166a(e).
After granting Jensen=s
renewed motion for summary judgment, the trial court determined that the motion
for entry of order under rule of civil procedure 166a(e) should be denied as
moot.





[2]The
dissent also notes that Miga has paid approximately $5 million in taxes on the
money received from Jensen.  See Dissent.
Op. at 4 n.5.  Jensen asserts that under
the facts of this case, Internal Revenue Code 26 U.S.C.A. ' 1341
(2002) provides a means which would allow Miga to receive a refund of the taxes
paid; Miga contends his right to a refund under this statute Ais by
no means assured.@  Because we are not privy to the detailed
information that Miga would need to provide to the Internal Revenue Service to
claim such a refund, we cannot address the likelihood of a refund to Miga of
the taxes he previously paid.





[3]In
Miga=s
response to Jensen=s
motion for temporary injunction, Miga stated, AIt is
undisputed that had the tender been conditional, postjudgment interest would
have continued to accrue.@





[4]Although
we sustained Miga=s
fourth issue and held that Miga is not collaterally estopped from asserting the
Agreed Order as a defense to Jensen=s claim for reimbursement,
our holding does not affect the trial court=s judgment.  Our holding on this issue merely meant that
we would consider Miga=s
other issues on appeal.





[1]Restatement
(First) of Restitution ' 112 (1937) (AA
person who without mistake, coercion or request has unconditionally conferred a
benefit upon another is not entitled to restitution, except where the benefit
was conferred under circumstances making such action necessary for the
protection of the interests of the other or of third persons.@); see
also Dallas County Community College Dist. v. Bolton, 185 S.W.3d
868, 883 (Tex. 2005) (students not entitled to refund of fees because payment
was voluntary and not under duress); Fortune Prod. Co. v. Conoco, Inc.,
52 S.W.3d 671, 684 (Tex. 2000) (AWhen a valid express contract
covers the subject matter of the parties= dispute, there can be no
recovery under a quasi-contract theory.@); Allstate Ins. v. Felts,
No. 09-92-00239-CV, 1993 WL 367053 at *3 (Tex. App.CBeaumont,
Sept. 16, 1993, writ denied) (not designated for publication) (Aunconditional@
means that the paying party Ahas no intent to attempt to
recover the funds@)





[2]As a result of the
agreement, no further postjudgment interest would accrue on $23.4 million of
the judgment amount, Jensen=s supersedeas bond  obligation was reduced from $29.5 million to
approximately $6.1 million, and the collateral securing the $23.4 million
portion of the bond would be released to Jensen.  Miga=s appellate counsel explains
the circumstances surrounding the Rule 11 agreement as follows: 

 

At the time of the agreement, this Court
had just affirmed nearly all of the trial court=s
judgment against Jensen (while also affirming the denial of Miga=s
punitive damages award, striking the $1,034,400 actual damages award, and
denying prejudgment interest).  Facing
the continuing accrual of post judgment interest while both parties
contemplated further appeals to the Texas Supreme Court, Jensen had at least
two choices regarding the existing judgment liability.  Obviously, he could have left the supersedeas
bond in place and continued to fund the accruing post judgment interest B a
logical and economically neutral choice if he believed he would ultimately
prevail and obtain the release of his bond collateral.  But given the statistical odds against the
Supreme Court even reviewing, much less reversing, the judgment against him,
Jensen chose certainty (stopping the accrual of post judgment interest) over
speculation (waiting for a potential reversal so he could recover his
collateral).  He did so by
unconditionally paying Miga an amount equal to the portion of the judgment that
he very likely would owe in any event. 





[3]Despite Jensen=s
unconditional tender of $23.4 million and the release of his bond collateral,
there still remained a judgment against Jensen that was secured by a
supersedeas bond of nearly $6.1 million. 
Jensen, therefore, had a justiciable interest in appealing to discharge
the remaining judgment to obtain a release of the bond that secured it. 





[4]The majority denies
that adding this implicit term to the Rule 11 agreement in this case Aadd[s]
an unstated condition to the parties= agreement,@ but,
of course, that is exactly what the majority has done.





[5]Miga paid
approximately $5 million in taxes on the money. 
Under the majority opinion, he must now pay Jensen the entire balance of
the $23.4 million plus interest.





[6]Dallas
County Community College Dist., 185 S.W.3d at 881 (students
seeking refund of fees were not under duress when fees were paid because they Ahad
options by which they could avoid paying the increased fee or at least lower
the fee and still take college classes@); BMG Direct Mktg. v.
Peake, 178 S.W.3d 763, 775 (Tex. 2005) (money voluntarily paid, with full
knowledge of the facts, in the absence of fraud, deception, duress or
compulsion, cannot be recovered merely because the party at the time of payment
was ignorant of or mistook the law as to his liability).





[7]The same rules
governing the interpretation of contracts apply in construing court orders and
Rule 11 agreements.  Lone Star Cement
Corp. v. Fair, 467 S.W.2d 402, 404-05 (Tex. 1971).